CANTON TOWERS, LTD., APPELLEE, *v.*
BOARD OF REVISION OF STARK COUNTY, APPELLANT.

[Cite as Canton Towers, Ltd. *v.* Bd. of Revision (1983), 3 Ohio St. 3d 4.]

(No. 82-439—Decided February 9, 1983.)

*Fred Siegel Co., L.P.A.,* and *Mr. Fred Siegel,* for appellee.

*Mr. James R. Unger,* prosecuting attorney, and *Mr. John B. Wirtz,* for appellant.

*Per Curiam.* In order to determine the taxable value of the subject property, the BTA must first determine the "true value in money," as mandated by Section 2, Article XII of the Ohio Constitution and as codified in R.C. Title

57. *Wynwood Apartments, Inc.* v. *Bd. of Revision* (1979), 59 Ohio St. 2d 34, 35 [13 O.O.3d 19]. Appellant contends that the BTA erred in determining the true value of the subject property. The true or fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the BTA with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful. *Consolidated Aluminum Corp.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 410, 414 [20 O.O.3d 357]; *Bd. of Revision* v. *Fodor* (1968), 15 Ohio St. 2d 52 [44 O.O.2d 30].

The best evidence of the "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction. *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129 [4 O.O.3d 309], paragraph one of the syllabus. Absent such information, Ohio Adm. Code 5705-3-03 sets forth three methods by which true value of real property may be calculated. These three recognized approaches are: (1) the market data approach, in which recent sales of comparable properties are weighed; (2) the income approach, in which net income from the property is capitalized; and (3) the cost approach, which adds the depreciated cost of the improvements to the land to the value of the land itself.

Appellant and the BTA had two appraisals of the subject property as of January 1, 1979 available for consideration. William J. Lemmon prepared a report for the board of revision, and developed the following values: market data approach — not available; income approach — $4,927,000; cost approach — $5,392,100. Richard Van Curen prepared a report at the request of appellee, which resulted in the following figures: market data approach — not available; income approach — $2,850,000; cost approach — $3,911,500. Both Lemmon and Van Curen concluded that the best indicator of true value was that derived from the income approach, Lemmon giving an estimated value of $4,927,000, and Van Curen making a final value estimate of $2,850,000. Moreover, both boards apparently accepted the conclusion that the income approach was most appropriate, although appellant adopted Lemmon's figures, while the BTA followed Van Curen's estimate.

Appellant first contends that the BTA abused its discretion by using the income approach instead of the cost approach to valuation.

However, Lemmon indicated that the cost approach was not appropriate, "due to the type of property being appraised." Similarly, Van Curen rejected the reliability of the cost approach because that value "is before any allowance for economic obsolescence. The plain fact of the matter is that the open market rents obtainable in this area would not be high enough to make the construction of this building feasible and it could — and would — not have been built if there had not been the very substantial Government subsidy." Both appraisers recognized that the cost of construction did not indicate the true value of the property, since Canton Towers exists only due to the FHA's willingness to underwrite its cost and continued maintenance, in the interest

of providing centrally located low income housing for senior citizens. Without a federal loan guarantee, favorable mortgage terms, rent subsidy, and income tax advantages, the cost of construction for such housing would be prohibitively expensive. Considering the nature of this project, we do not find the BTA's rejection of the cost approach to be unreasonable or unlawful.

Appellant also contends that the BTA abused its discretion when it adopted the income approach valuation recommended by Van Curen. As provided in the Ohio Administrative Code, with this appraisal technique, "[t]he value is estimated by capitalizing the net income after expenses, including normal vacancies and credit losses. While the contract rental or lease of a given property is to be considered the current economic rent should be given weight. * * * Interest and capitalization rates should be determined from market data allowing for current returns on mortgages and equities." Ohio Adm. Code 5705-3-03(D)(2).

Van Curen's valuation of $2,850,000 was based on his estimate of fair rental value (economic rent) and current mortgage rates, rather than the "controlled contract rent" established by the FHA, and the longer term and lower mortgage rate obtained for the project. Lemmon used the actual fixed rent and mortgage for the property to arrive at his higher valuation.[1]

Appellant contends that only actual rents received and the forty year lower mortgage rate should have been used to calculate the income and capitalization rate. However, the Ohio Administrative Code specifically authorizes consideration of "economic rent" and "current returns on mortgages and equities" with the income approach to valuation. Moreover, this court has previously recognized that the BTA may consider economic rental value of commercial real property as an *indicium* of valuation for *ad valorem* real property taxation purposes. *Wynwood Apartments, Inc., supra,* syllabus. Although *Wynwood* involved a commercial property which had been rented for less-than-market rate, the principle applies with equal force to a residential unit in which artificially inflated rents are set. As in *Wynwood,* "economic rent is a proper consideration in a situation in which contract rent is not truly reflective of true value in money." *Id.* at 37.

Since it appears the figures used by Van Curen and accepted by the BTA were accurate approximations of current market rents and conventional financing rates, we find that the willingness of the BTA to base its decision upon the appraisal offered by appellee was not unreasonable or unlawful. The decision of the BTA is affirmed.

*Decision affirmed.*

---

[1] Van Curen valued the economic rent of the one-bedroom suites at $220 per month, and the two-bedroom suites at $265 per month. This compares with the "controlled contract rent" used by Lemmon of $286 and $335 per month, respectively. For the capitalization rate, Van Curen used a twenty-five year, seventy-five percent mortgage at ten and one-half percent interest, while Lemmon used figures based on the existing ninety percent, forty year mortgage, with an actual interest rate of 8.18 percent.

W. Brown, Sweeney, Holmes, C. Brown and Kerns, JJ., concur.

Celebrezze, C.J., and Locher, J., dissent.

Kerns, J., of the Second Appellate District, sitting by assignment.

Locher, J., dissenting. "The BTA is allowed 'wide discretion in determining the weight to be given to evidence and the credibility of witnesses * * *.' *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13 [73 O.O.2d 83], paragraph three of the syllabus. Nevertheless, R.C. 5717.04 permits reversal of a BTA decision when it is 'unreasonable or unlawful.' On direct appeal, this court has consistently reviewed the record before the BTA in order to determine whether there is evidence supporting the BTA's decision. See, *e.g., Cardinal Federal S. & L. Assn., supra; Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53, 58 [54 O.O.2d 191]; *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 139 [48 O.O.2d 169]; *Bd. of Revision* v. *One Euclid Co.* (1968), 16 Ohio St. 2d 43, 46 [45 O.O.2d 325]; *L. E. Shunk Latex Products, Inc.,* v. *Evatt* (1942), 140 Ohio St. 289, 292 [23 O.O.3d 495]; *Bd. of Education* v. *Evatt* (1940), 136 Ohio St. 283, 286 [16 O.O.3d 408]. Accordingly, the evidence before the BTA deserves a closer examination." *Youngstown Sheet & Tube Co.* v. *Bd. of Revision* (1981), 66 Ohio St. 2d 398, 406 [20 O.O.3d 349] (Locher, J., dissenting).

My review of the facts in this case leads me to a conclusion opposite to that of the majority. Therefore, I dissent.

Both appraisers, Lemmon and Van Curen, agreed that this building was unique and would not have been built without a government subsidy. They also agreed that the "income approach" was the best method of appraisal. (See Ohio Adm. Code 5705-3-03[D] for this kind of investment property.)

The majority notes that both appraisers deemed the market data approach, which *compares* the appraised property with recent sales, to be unavailable. Nevertheless, Van Curen used market information and comparisons in order to make his income approach appraisal. In particular, he used market data to arrive at values for rental income and mortgage terms—including percent borrowed, duration and interest rate. The lower rental income decreased the cash flow; the higher interest rate decreased the present value of future income. The net effect of this was to decrease Van Curen's valuation of the property.

Unfortunately, Van Curen's result does not meet the constitutional "true value in money" standard, Section 2, Article XII of the Ohio Constitution, and its administrative definition. Ohio Adm. Code 5705-3-01 provides, in part:

"As used in rules 5705-3-01 to 5705-3-13 of the Administrative Code:

"(A)  'True value in money' or 'true value' means one of the following:

"(1)  The fair market value or current market value of property and is the price at which property should change hands on the open market between

a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having a knowledge of *all the relevant facts;*

"(2) The price at which property did change hands under the conditions described in section 5713.03 of the Revised Code, within a reasonable length of time either before or after the tax lien date, unless subsequent to the sale the property loses value due to some casualty or an improvement is added to the property." (Emphasis added.)

At the heart of the "true value in money" standard is the consideration of what price an economically rational buyer would pay in the market place. "The best evidence of 'true value in money' of real property is an actual, recent sale of the property in an arm's-length transaction. (*State, ex rel. Park Investment Co.,* v. *Bd. of Tax Appeals,* 175 Ohio St. 410 [25 O.O.2d 432], approved and followed.)" *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129 [4 O.O.3d 309], paragraph one of the syllabus. In the absence of the best evidence, however, an appraisal is an effective means of estimating true value. See Ohio Adm. Code 5705-3-03(D).

The BTA erred, therefore, by adopting Van Curen's appraised value. He admitted, for example, that Canton Towers would not have been built if its income were limited to market or "economic" rents. It is self-contradictory, then, to compare this facility with non-subsidized apartments whose rents do not include all utilities and which are both larger and in better locations.

The majority's reliance on *Wynwood Apartments, Inc.* v. *Bd. of Revision* (1979), 59 Ohio St. 2d 34 [13 O.O.3d 19], therefore, is misplaced. It is worth noting that in *Wynwood* and the cases on which this court based that decision, using the contract rent would have led to a *lower* valuation. See 59 Ohio St. 2d, at 36-38, footnote. Furthermore, this court described economic rent as "the rental warranted to be paid in the open real estate market based upon current rentals being paid for *comparable space.*" (Emphasis added.) 59 Ohio St. 2d, at 35. As mentioned above, this building is unique in its area. There is no "comparable space." It is, therefore, impossible to calculate economic rent. Rather, the contract rent, which is practically guaranteed, and the actual mortgage terms, which specify interest less than the market because the risk is less, are the better means for estimating true value in money.

The decision of the BTA is, therefore, both unreasonable and unlawful. It is unreasonable because the board accepted a valuation based on an appraisal derived from comparisons in spite of the fact that the building is unique. The decision is unlawful because Van Curen's appraisal failed to consider all *relevant* facts as required by the Ohio Administrative Code and the Constitution in order to determine the true value in money. In this case, the relevant facts are the actual values.

Accordingly, I would reverse the decision of the BTA.

CELEBREZZE, C.J., concurs in the foregoing dissenting opinion.