OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Villa Park Limited, Appellant, v. Clark County Board of
Revision et al., Appellees.
[Cite as Villa Park Ltd. v. Clark Cty. Bd. of Revision
(1994),      Ohio St.3d     .]
Taxation -- Real property valuation -- Federally subsidized
      apartments -- Appropriate treatment of expenses in
      determining valuation.
      (No. 92-1488 -- Submitted May 27, 1993 -- Decided February
2, 1994.)
      Appeal from the Board of Tax Appeals, No. 90-H-558.
      Appellant, Villa Park Limited ("Villa Park"), owns a
federally subsidized apartment complex located on 11.56 acres
at 1350 Vester Avenue and adjacent addresses in Springfield,
Ohio.  The complex, an all-electric project, was constructed in
two phases in 1977 and 1978.  Phase I, for elderly or
handicapped persons, is a three-story apartment building with
one hundred one units consisting of ninety one-bedroom,
one-bath apartments, ten one-bedroom, one-bath apartments
designed for residents using wheelchairs, and one two-bedroom,
one-bath apartment.  Phase II, for low-income families, is
fifty townhouse apartments in seven buildings, with thirty
three-bedroom units and twenty four-bedroom units.  Villa Park
pays all the Phase I tenants' utilities, including electricity,
and Phase II tenants pay their own utilities, except for water
and sewer.
      For tax year 1989, the Clark County Auditor assessed the
subject property at a true value of $3,986,250. On appeal the
board of revision affirmed the value determination.  On appeal
to the Board of Tax Appeals ("BTA"), Villa Park claimed the
correct true value was $2,575,000.
      At the hearing before the BTA, Villa Park's appraiser,
John R. Garvin, used the income and the cost approaches.
Garvin found no comparable sales with a similar apartment mix
in the Springfield area, so he did not use the market-data
approach.  Appellee's appraiser, Gerald Tipton, used all three
approaches, but chose a value derived from a market approach
that compared properties based on ratios of sales prices to
potential gross rental income.

Both appraisers used a five-percent vacancy and credit-loss rate, which reflected rates in nonsubsidized apartments in the Springfield area. In the income approach, the primary disagreement between the appraisers involved calculating expenses. Garvin used economic rents but actual expenses. Garvin stabilized expenses by applying an economic budget that he developed. The budget included reserves for replacements as adjustments, to reflect economic or market expenses. Tipton used economic or market rents, and, for operating expenses, a pro forma forty-percent rate.

The BTA criticized Garvin's expenses, finding that the fifty-four-percent ratio of expenses to gross income was "excessive," and that "$108,500 is excessive for electricity since the market rents used in the income approach presume the tenants will pay electricity."

The BTA found that the parties had not submitted evidence of any sale price of the property to indicate its true value, and that the parties relied on the approaches to value prescribed in Ohio Adm. Code 5705-3-03 (D).

The BTA found that the fair market value, or the "true value in money," of the property was $3,281,140.

The cause is now before this court upon an appeal as of right.

Arter & Hadden and Karen H. Bauernschmidt, for appellant.
Stephen A. Schumaker, Clark County Prosecuting Attorney, Kirk D. Ellis and William D. Hoffman, Assistant Prosecuting Attorneys, for appellees.

Per Curiam. From our review of the record, the decision of the BTA is unreasonable and unlawful. The decision is vacated and the cause is remanded for further consideration.

The BTA found, and neither party disputes, that the best method of valuing subsidized apartments is the income approach.

The second paragraph of the syllabus of Alliance Towers, Ltd., v. Stark Cty. Bd. of Revision (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, one of the three leading cases involving valuation of subsidized apartments, states:

"An apartment property built and operated under the auspices of the Department of Housing and Urban Development is to be valued, for real property tax purposes, with due regard for market rent and current returns on mortgages and equities." See, also, Canton Towers, Ltd. v. Stark Cty. Bd. of Revision (1983), 3 Ohio St.3d 4, 3 OBR 302, 444 N.E.2d 1027, and Oberlin Manor, Ltd. v. Lorain Cty. Bd. of Revision (1989), 45 Ohio St.3d 56, 543 N.E.2d 768.

While there is no dispute about what kind of rent is applicable ("'economic rent is a proper consideration in a situation in which contract rent is not truly reflective of true value in money,'" Canton Towers, supra, at 7, 3 OBR at 305, 444 N.E.2d at 1030, quoting Wynwood Apts., Inc. v. Cuyahoga Cty. Bd. of Revision [1979], 59 Ohio St.2d 34, 37, 13 O.O. 3d 19, 21, 391 N.E.2d 346, 347), none of these cases specifically discusses the appropriate treatment of expenses in determining the value of subsidized apartments.

Villa Park points out that Garvin "reviewed actual expenses and market expenses" and "stablized operating expenses

to reflect 'market expenses.'" Villa Park argues that all apartments (subsidized and nonsubsidized) have expenses for administration, utilities, maintenance, insurance, etc. that can be stabilized to reflect market expenses. We agree.

American Institute of Real Estate Appraisers, The Appraisal of Real Estate (9 Ed. 1987) 445, states:

"Operating expenses are the periodic expenditures necessary to maintain the real property and continue the production of the effective gross income.

"* * *

"* * * [A]n appraiser analyzes and reconstructs expense statements to develop a typical expense expectancy for the property on an annual accrual basis.

"Operating expense estimates usually list fixed expenses, variable expenses, and a replacement allowance." (Emphasis sic.)

Garvin reviewed and stabilized expenses and developed an expense budget that included administrative and other operating expenses and reserves for replacement.

The BTA found that Garvin erred in using actual expenses. The question is: Did Garvin use actual expenses improperly or, as he contends, by proper adjustments to actual expenses, did he stabilize them to "reflect market operating expenses"? In other words, did he employ an alternate way of showing expenses that was equivalent to using market operating expenses?

In Oberlin Manor, supra, we criticized the board of revision's appraiser for basing "his opinion on data from other subsidized apartments and actual income, expense, and cost figures from Oberlin Manor." Id., 45 Ohio St. 3d at 56, 543 N.E.2d at 768. We accepted the opinion of value expressed by Oberlin Manor's appraiser, based on "information derived from the general apartment market." Id.

Garvin's testimony in the instant appeal may be equivalent to information derived from the general apartment market and, thus, would be likewise acceptable, based as it is on his analysis that adjusted actual expenses to "reflect economic or market expenses" and that included reserves for replacement to compute net rentals. "Such reserves are proper items of expense to be utilized when estimating the true value of real property through an income approach." Freshwater v. Belmont Cty. Bd. of Revision (1991), 58 Ohio St.3d 140, 141, 568 N.E.2d 1215, 1217.

Here, as in Freshwater, the following caveat applies: "The BTA should analyze the reserves to determine if they include any inappropriate items, or if they are otherwise excessive, which would warrant a modification in the amount deducted as expenses." Id.

The BTA should also decide, in the context of Garvin's testimony, the meaning of the terms "stabilized" and "reflective of" and whether Garvin's stabilized expenses are in accordance with economic or market expenses.

In its review of the record, the BTA apparently overlooked the fact that the cost of electricity was included in the rent that Phase I tenants paid and that Garvin adjusted his market rent to compensate for this. The BTA observed: "$108,500 [Garvin's electricity expense] is excessive for electricity since the market rents used in the income approach presume the

tenants will pay electricity."  This error affected the BTA's determination of market expenses and the resultant true value. The BTA should review the $108,500 cost of electricity to see what impact, if any, it has on market rent and market expenses and whether Garvin correctly calculated for this expense.

The decision of the BTA is reversed and remanded to the BTA with instructions to (1) review and reconsider the record, (2) make factual findings, that are supported by the record, of the appropriate economic or market rents and expenses to be used in the income approach to value, and (3) indicate the specific calculations the BTA uses to determine the fair market value or the "true value in money" of the subject property.

Decision reversed
and cause remanded.

Moyer, C.J., A.W. Sweeney, Wright, Resnick and Pfeifer, JJ., concur.

Douglas and F.E. Sweeney, JJ., dissent.

Douglas, J., dissenting.  I respectfully dissent.  I would affirm the decision of the BTA.

In Crow v. Cuyahoga Cty. Bd. of Revision (1990), 50 Ohio St.3d 55, 57, 552 N.E.2d 892, 893, we said that "[i]t has been held by this court that the best method of determining true value of real property, in the absence of an actual sale of such property in an arm's length transaction, is an appraisal based on the amount that such property would bring if sold on the open market.  * * *"  (Citation omitted.)  Further, in Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph four of the syllabus, this court held:  "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.  * * *" (Citation omitted and emphasis added.)

A review of the decision of the BTA reveals that the BTA, in placing a value on the Villa Park Apartments, used the income approach to valuation.  The BTA was required to follow, and in my judgment did follow, this court's cases in Canton Towers, Ltd. v. Stark Cty. Bd. of Revision (1983), 3 Ohio St.3d 4, 3 OBR 302, 444 N.E.2d 1027, Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, and Oberlin Manor, Ltd. v. Lorain Cty. Bd. of Revision (1989), 45 Ohio St.3d 56, 543 N.E.2d 768.  In doing so, the BTA was presented with separate appraisals from the competing interests.  The BTA received the evidence, weighed it, accepted in part and rejected in part the methods used and appraisals submitted, and arrived at the true and taxable value of the property.  In reaching its decision, the BTA acted well within its authority.

In R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877, we stated that "[t]he BTA need not adopt any expert's valuation.  It has wide discretion to determine the weight given to evidence and the credibility of witnesses before it.  Its true value decision is

a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful. * * *" (Citation omitted.) Further, this court has stated that "[w]e do not sit either as a 'super' Board of Tax Appeals or as a trier of fact de novo. (Citation omitted.) Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision (1981), 66 Ohio St.2d 398, 400, 20 O.O.3d 349, 351, 422 N.E.2d 846, 848. Findings of fact by the BTA based upon sufficient probative evidence will not be overruled by this court. Hawthorn Mellody, Inc. v. Lindley (1981), 65 Ohio St.2d 47, 19 O.O.3d 234, 417 N.E.2d 1257, syllabus.

We should not substitute our judgment for the decision of the BTA. Because I believe that in this case that is what the majority is doing, I must respectfully dissent.