[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 552.]

OLMSTED FALLS VILLAGE ASSOCIATION, APPELLANT, *v.* CUYAHOGA COUNTY
BOARD OF REVISION; OLMSTED FALLS BOARD OF EDUCATION, APPELLEE.
[Cite as *Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision*,
1996-Ohio-456.]

*Taxation—Valuation of apartment complex—Board of Tax Appeals' decision
reversed and remanded when it is based on evidence that did not value the
property as of the tax lien date.*

(No. 95-839—Submitted December 14, 1995—Decided June 5, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-X-998.

———————————

{¶ 1} The Olmsted Falls Village Association, appellant, complained to the Cuyahoga County Board of Revision ("BOR"), ("association"), about the true value of its apartment complex as of January 1, 1991. It sought to decrease the value of this complex from $2,432,914 to $1,870,000. The Olmsted Falls Board of Education ("BOE"), appellee, filed a counter-complaint seeking to increase the value of this property to $2,480,000.

{¶ 2} The property at issue is a 5.468-acre parcel of land containing five two-story, frame apartment buildings, built in 1971. Each building contains sixteen suites for a total of eighty suites. This total number of suites divides into forty one-bedroom apartments, twenty two-bedroom apartments, and twenty three-bedroom apartments. Each apartment unit has central air-conditioning, a forced-air, gas furnace, and a thirty-gallon, hot water tank. Each building contains a laundry room with one washer and one dryer. The complex includes an in-ground swimming pool with pool building and associated land improvements and landscaping, and several service buildings.

{¶ 3} The BOR, after hearing, retained the true value determined by the auditor, and the Association appealed to the Board of Tax Appeals ("BTA").

{¶ 4} The Association presented the testimony of Wesley Baker, a real estate appraisal expert, to the BTA. He testified that the true value of the property was $1,950,000 as of January 1, 1991. The BOE presented the expert real estate appraisal testimony of Sam D. Canitia, who testified that the true value of the property was $2,476,000. In testifying about supporting data for selecting a capitalization rate, Canitia engaged in the following colloquy with counsel for the Association:

"Q. Did you have a quarterly report for the last quarter of 1990?

"A. Yes, ma'am.

"Q. You also had a quarterly report for the first quarter of 1991; is that correct?

"A. Yes, ma'am.

"Q. Wouldn't those reports be more reflective of the market as of January 1st, 1991?

"A. We've got a nomenclature problem here. 1/1/91 is a reflective date, and that's a tax lien date, it's not a date of valuation. The date of valuation is for the year -- the activity of the year 1991. I would not look into '90 at all, I would look into the year of '91.

"So I could not answer your question if you're talking about 1990 because that's not part of my appraisal.

"Q. I believe the taxes became a lien on January 1st, 1991 and the auditor determined value as of January 1st, 1991.

"A. As a reflective date, not as a date certain.

"Q. That is your opinion.

2

"A. We got a problem here, I don't know whether we are going to cure it, but I can indicate to you that there is a problem with respect to 1991 as against the year 1991, tax lien date '91 and date of valuation '91.

"Q. You on your first page of your appraisal report say 'As of January 1, 1991.'

"A. That's a reflective date. It reflects the activity for the year 1991."

{¶ 5} The BTA valued the property based on Canitia's opinion. Consequently, it determined the true value of the property to be $2,476,000 as of January 1, 1991.

{¶ 6} This cause is before this court upon an appeal as of right.

_____

*Fred Siegel Co., L.P.A., and Annrita S. Johnson*, for appellant.

*Kolick & Kondzer, Daniel J. Kolick* and *John P. Desimone*, for appellee.

_____

***Per Curiam.***

{¶ 7} We reverse the BTA's decision and remand this matter to the BTA because the BTA based its decision on evidence that did not value the property as of the tax lien date.

{¶ 8} R.C. 5715.19(A)(1)(d) authorizes a property owner to file complaints with a board of revision against determinations made by the county auditor concerning the true value of the owner's property. According to R.C. 5715.19(D), "[t]he determination of any such complaint shall relate back to the date when the lien for taxes * * * for the current year attached * * *." The lien for taxes for each year attaches on the first day of January. R.C. 323.11.

{¶ 9} To emphasize the importance of this date, R.C. 5715.01, which authorizes the Tax Commissioner to direct and supervise the assessment of real property for taxation, including adopting rules to that end, states:

"The commissioner shall neither adopt nor enforce any rule that requires true value for any tax year to be any value other than the true value in money on the tax lien date of such tax year * * *."

{¶ 10} The BTA valued the property according to Canitia's opinion of value. However, Canitia did not value the property as of any certain date. According to his testimony, he valued the property as of the entire year. To him, the tax lien date was a reflective date, not the valuation date. Thus, the evidence on which the BTA relied for its ultimate decision is unlawful. *SFZ Transp., Inc. v. Limbach* (1993), 66 Ohio St.3d 602, 613 N.E. 2d 1037.

{¶ 11} We emphasize that the BTA "* * * may consider pre- and post-tax lien date factors that affect the true value of the taxpayer's property on the tax lien date." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 20 O.O. 3d 349, 422 N.E. 2d 846, paragraph two of the syllabus. However, the BTA must base its decision on an opinion of true value that expresses a value for the property as of the tax lien date of the year in question.

{¶ 12} We also stress that the BTA decides the factual matters in these cases, *Wolf v. Cuyahoga Cty. Bd. of Revision* (1984), 11 Ohio St.3d 205, 207, 11 OBR 523, 524, 465 N.E. 2d 50, 52, and that "[w]e will not overrule BTA findings of fact that are based upon sufficient probative evidence." *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E. 2d 874, 877.

{¶ 13} We turn now to some other specific claims of error presented by the Association. First, the Association claims that the BTA erred when it did not employ the actual income and expenses for the property. In *Webb Corp. v. Lucas Cty. Bd. of Revision* (1995), 72 Ohio St.3d 36, 647 N.E. 2d 162, we held that an appraiser may employ actual income as reduced by actual expenses if both amounts conform to the market. We did not require such use. Moreover, we did not, in *Villa Park Ltd. v. Clark Cty. Bd. of Revision* (1994), 68 Ohio St.3d 215, 625 N.E. 2d 613,

reject the use of a *pro forma* expense rate. Instead, we required the BTA to make factual findings, supported by the record, of the appropriate market rents and expenses to be used in the income approach to value. *Id.* at 218, 625 N.E. 2d at 615.

{¶ 14} Furthermore, we did not require the BTA to deduct a reserve for replacement in *Freshwater v. Belmont Cty. Bd. of Revision* (1991), 58 Ohio St.3d 140, 568 N.E. 2d 1215, as claimed by the Association. In that case, the BTA refused to consider such a deduction, but we reversed and remanded the matter for the BTA to reconsider the components included in and the deductibility of reserves for replacement. We ruled that such an expense category was a proper element in an income approach analysis. We did not require the deduction of a reserve for replacement. In this case, we note, neither appraiser proposed a reserve for replacement. Thus, the record does not support such a reserve deduction.

{¶ 15} In summary, as to these latter claims, "[w]e decline to bind the BTA to a particular method of valuation because the imposition of rigid methodological strictures would necessarily impinge upon the BTA's wide discretion to weigh evidence and assess the credibility of witnesses." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision, supra,* 66 Ohio St. 2d at 402, 20 O.O. 3d at 352, 422 N.E. 2d at 849.

{¶ 16} Finally, the Association claims that Canitia is not qualified to testify, since he has not obtained a certificate under R.C. Chapter 4763, the chapter governing real estate appraisers. However, R.C. 4763.13(F) states:

"Nothing this in this chapter shall preclude a person who is not licensed or certified under this chapter from appraising real estate for compensation."

{¶ 17} Thus, Canitia may testify about the true value of real estate if the BTA decides he is qualified.

**{¶ 18}** Accordingly, we reverse the BTA's decision because it is based on an opinion of true value that did not value the property as of the tax lien date. We remand the cause to the BTA to revalue the property.

*Decision reversed*

*and cause remanded.*

MOYER, C.J., F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

WRIGHT, J., not participating.

_____

**DOUGLAS, J., dissenting.**

**{¶ 19}** The semantical argument made by the majority does not change, in any way, the true value of the property in question as of tax lien date. Once again, a majority of the court is invading the province of the BTA. I would affirm the decision of the BTA.

RESNICK, J., concurs in the foregoing dissenting opinion.

_____