COLONIAL VILLAGE LTD., APPELLANT, v. WASHINGTON COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641.]

---

494

(No. 2006–1000—Submitted April 3, 2007—Decided September 26, 2007.)

────────────

────────────

PFEIFER, J.

{¶ 1} This appeal concerns the valuation of federally subsidized housing in Marietta, in Washington County, for the 2003 tax year. As a threshold matter, we confront a jurisdictional issue based on the appellant's assertion that appellee Washington County Board of Revision ("BOR") failed to send its decision to the appellant by certified mail, as required by R.C. 5715.20. We hold that under the particular circumstances of this case, a waiver of the prescribed method of certification has occurred. On the merits, we conclude that the Board of Tax Appeals ("BTA") acted unlawfully when it affirmed the BOR and upheld the auditor's original, cost-based valuation. Given the record before it, the BTA should have performed its duty to make an independent valuation of the property. On remand, we instruct the BTA to do so.

I

{¶ 2} Appellant, Colonial Village, filed a motion to remand, which asserts, for the first time, that the BOR sent its decision to Colonial Village by regular mail, rather than by certified mail. This allegation, if true, potentially affects the BTA's jurisdiction and, derivatively, our own jurisdiction to address the merits of this appeal.

{¶ 3} R.C. 5715.20(A) requires a board of revision to "certify its action by certified mail to the person in whose name the property is listed or sought to be listed and to the complainant if the complainant is not the person in whose name the property is listed or sought to be listed." R.C. 5717.01 provides that an

appeal "may be taken to the board of tax appeals within thirty days after the notice of the decision of the county board of revision is mailed as provided in division (A) of section 5715.20 of the Revised Code."

{¶ 4} Colonial Village argues that because the BOR failed to send its decision by certified mail as required by R.C. 5715.20, the period for filing an appeal to the BTA never began to run under R.C. 5717.01. Colonial Village contends, therefore, that the notice of appeal that it filed was premature and that the BTA did not have jurisdiction. Colonial Village further reasons that because the BTA did not have jurisdiction, the BTA's decision is a nullity and its ruling on the merits cannot properly be addressed by this court. Colonial Village argues that this case should be remanded so that the BOR can properly certify its decision in compliance with R.C. 5715.20. See *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision*, 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160. That act would start the whole process of appeal all over again. Id. at ¶ 22.

{¶ 5} Central to this argument is the factual contention that the BOR did not send its decision by certified mail. Colonial Village submits no evidence to support this allegation. The record contains the BOR's formal certification to the BTA, stating that the BOR "mailed the decision by certified mail to all parties as prescribed by R.C. 5715.20." Colonial Village did not apprise the BTA that the county's certification was inaccurate, and it even stated in its brief to the BTA that it had "filed a timely appeal to the Ohio Board of Tax Appeals." Based on this information, the BTA could reasonably have understood itself to have jurisdiction over the case.

{¶ 6} The auditor argues that the case should not be remanded, but he does not state whether the BOR mailed its decision by certified mail. The BOR did not join in the response to Colonial Village's motion. In this context, we find it appropriate to admonish litigants that when a significant jurisdictional issue is raised, we expect the contending parties to state the facts, as they believe them, and to present evidence in support of their material allegations.

{¶ 7} Although the evidence is not conclusive in this case, we deny the motion to remand even assuming that the BOR did not send its decision by certified mail. The failure to use certified mail as required by R.C. 5715.20(A) belongs to that limited class of jurisdictional defects that may be waived under appropriate circumstances. See *Mantho v. Bd. of Liquor Control* (1954), 162 Ohio St. 37, 54 O.O. 1, 120 N.E.2d 730. We conclude that a waiver occurred in this case.

{¶ 8} In *Mantho*, an applicant for a liquor permit appealed from a denial under the Administrative Procedure Act. After the court of common pleas ruled in favor of the applicant, state liquor authorities appealed, and the court of appeals reversed. The permit applicant in *Mantho* moved the court of appeals to vacate its decision on the grounds that the appellate court did not have jurisdiction,

relying on *Corn v. Bd. of Liquor Control* (1953), 160 Ohio St. 9, 50 O.O. 479, 113 N.E.2d 360. The court of appeals vacated its judgment, and on appeal to this court, we concluded: "The Board of Liquor Control submitted itself to the jurisdiction of the Court of Appeals. The applicants had the right at that time to raise objections to the prosecuting of the appeals and to move for their dismissal. They did not exercise that right but proceeded in such manner as to constitute approval of the appeals. By such conduct they waived their right to raise the question of jurisdiction over the parties after judgment." *Mantho,* 162 Ohio St. at 41–42, 54 O.O. 1, 120 N.E.2d 730.

{¶ 9} In this case, the BOR's valuation of Colonial Village's property constitutes a subject matter that ordinarily lies within the BTA's jurisdiction when a proper notice of appeal is filed pursuant to R.C. 5717.01. Colonial Village was plainly a proper party to pursue an appeal and was the type of party R.C. 5715.20(A) sought to protect by requiring certified mail service of the BOR decision. It follows that when none of the parties before the BTA raised the improper method of certification, that particular irregularity was waived. Accordingly, even though the BTA may not originally have had jurisdiction, it ultimately rendered a valid judgment, which is subject to appeal to this court on the merits. See *Mantho* at paragraph two of the syllabus.

{¶ 10} Our decision does not affect the many cases in which we have held that conditions for pursuing an appeal are mandatory and jurisdictional. See, e.g., *Am. Restaurant & Lunch Co. v. Glander* (1946), 147 Ohio St. 147, 34 O.O. 8, 70 N.E.2d 93, paragraph one of the syllabus ("Where a statute confers the right of appeal, adherence to the conditions thereby imposed is essential to the enjoyment of the right conferred"); *Cleveland Elec. Illum.,* 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160, at ¶ 14–16; *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 31 OBR 584, 511 N.E.2d 112, syllabus ("The fifteen-day appeal period provided in R.C. 119.12 does not commence to run until the agency whose order is being appealed fully complies with the procedural requirements set forth in R.C. 119.09"). Moreover, there are times when jurisdiction can be raised late in the proceedings, including for the first time on appeal. *Cleveland Elec. Illum.,* 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160, at ¶ 16; *H.R. Options, Inc. v. Zaino,* 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, ¶ 8 (though raised late, an objection based on a jurisdictional defect was "preserved because a party cannot waive subject-matter jurisdiction, regardless of procedural deficiencies"); *Jenkins v. Keller* (1966), 6 Ohio St.2d 122, 126, 35 O.O.2d 147, 216 N.E.2d 379 ("where a court has no jurisdiction over the subject matter of an action, a challenge to jurisdiction on such ground may effectively be made for the first time on appeal in a reviewing court").

{¶ 11} The present case, however, is governed by *Mantho*. The defect in this case concerns not subject-matter jurisdiction but the method by which parties receive notice and exercise their right to litigate. Similar to the issue in *Mantho*, the question in this case is whether the BTA "acquired jurisdiction of the persons" despite the BOR's failure to properly certify its decision. *Mantho*, 162 Ohio St. at 41, 54 O.O. 1, 120 N.E.2d 730. Similar to the board in *Mantho*, Colonial Village, by appealing, "submitted itself to the jurisdiction" of the BTA, and the parties "had the right at that time to raise objections to the prosecuting of the appeals." Id. Failure to object at the BTA means that the parties "waived their right to raise the question of jurisdiction over the parties after judgment." Id. at 41–42, 54 O.O. 1, 120 N.E.2d 730. In other words, a party to a BTA appeal pursuant to R.C. 5717.01 may waive the method of certification as to itself when it pursues an appeal and when no party contests jurisdiction before the BTA. The issuance of a BTA decision on the merits completes the waiver, and such a decision is valid and binding.

{¶ 12} Our holding does not conflict with the principles we articulated in *Cleveland Elec. Illum.* for two different reasons. First, the parties in *Cleveland Elec. Illum.* fully litigated before the BTA the board of revision's failure to certify its decision to the Tax Commissioner. 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160, at ¶ 8. The parties in this case could have raised improper certification to the BTA, and the BTA would have been obliged to dismiss, if the certification was improper. But the issuance of the BTA's decision on the merits, under color of the BTA's jurisdiction, and in the absence of an objection, completed a waiver of that defect.

{¶ 13} Second, in *Cleveland Elec. Illum.*, the boards of revision failed to certify their decisions to a third party—the Tax Commissioner—who did not himself pursue an appeal.[1] 96 Ohio St.3d 165, 2002-Ohio-4033, 772 N.E.2d 1160, at ¶ 13. Because a principal purpose of the certification was to notify persons like the Tax Commissioner of the board of revision's decision so that, among other things, such persons could appeal, the purpose of requiring the certification had not been satisfied in *Cleveland Elec. Illum.* We declined to regard the Tax Commissioner's own willingness to dispense with certification as constituting a waiver in *Cleveland Elec. Illum.* Id. at ¶ 13, 18. Moreover, because the jurisdictional fault concerned a notice that would permit the Tax Commissioner to exercise a statutorily recognized right to appeal and participate, any decision the BTA rendered would be a nullity. See, e.g., *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (2000), 87 Ohio St.3d 363, 366–367, 721 N.E.2d 40.

---

1. After *Cleveland Elec. Illum.*, the General Assembly eliminated the requirement that boards of revision always certify their decisions to the Tax Commissioner. 2002 H.B. No. 675, 149 Ohio Laws, Part V, 8477, 8737.

Our holding in *Cleveland Elec. Illum.* applied only to future cases and cases that were pending; otherwise, our decision would have created a universe of void BTA decisions. *Cleveland Elec. Illum.* at ¶ 20.

{¶ 14} By contrast, when a party that did not receive proper notice, like Colonial Village, perfects an otherwise valid appeal at the BTA, that action manifests the fulfillment of the statutory purpose, particularly once the BTA has issued its decision on the merits. A waiver occurred once the BTA issued its decision, and that decision may no longer be contested on the basis of a failure to comply with the certification requirement of R.C. 5715.20(A). See *Hausman v. Dayton* (Dec. 22, 1993), 2d Dist. No. 13647, 1993 WL 541649, affirmed in part and reversed in part on other grounds (1995), 73 Ohio St.3d 671, 653 N.E.2d 1190; *Serv. Emp. Internatl. Union Dist. 1199 v. Ohio Elections Comm.*, 158 Ohio App.3d 769, 2004-Ohio-5662, 822 N.E.2d 424, ¶ 13.

{¶ 15} Finally, this case differs from the situation we recently confronted in *Hughes v. Ohio Dept. of Commerce*, 114 Ohio St.3d 47, 2007-Ohio-2877, 868 N.E.2d 246. In that case, the state agency failed to serve notice of its decision as required by R.C. 119.09, with the result that the appeal period under R.C. 119.12 did not begin to run under the terms of R.C. 119.12. But no waiver occurred there because the failure of proper certification under R.C. 119.09 was raised at the common pleas court—just as we have noted that the parties could have raised the improper certification at the BTA in this case. Because the certification issue in *Hughes* had been raised in the lower tribunal, the issue was preserved; the failure to raise the jurisdictional issue at the BTA in this case means that it is barred. We deny Colonial Village's motion to remand.

II

{¶ 16} On the merits, Colonial Village challenges the BTA's affirmance of the valuation reached by the BOR and the auditor. According to the auditor's property record card, the county auditor based the value assigned to the property on "reproduction cost," setting $329,230 as the cost figure for each of the five apartment buildings, $25,480 for an outbuilding, and $27,470 for the paved area. The six buildings were allowed 25 percent depreciation, and the paving 75 percent. The aggregate cost valuation figure for the improvements was $1,260,580, which together with a land value of $60,400 yielded a property value of $1,320,980.

{¶ 17} Colonial Village presented its opinion of value as an owner to the BOR. The opinion stated that the improvements constitute federally subsidized housing, for which tenants pay 30 percent of their adjusted gross income as rent, with the federal government paying the remainder of the specified monthly rental fee.

There are a total of 45 apartments, of which 35 are two-bedroom and 10 are three-bedroom units. Colonial Village's rent roll as of the tax lien date, January 1, 2003, showed an average contract rent figure of $590 per month. Because of government subsidies, the amount of that rent paid by tenants averaged $108 per month. The average contract rent for the three-bedroom units was $665 per month; the average contract rent for the two-bedroom units was $568 per month. By contrast, the opinion's market study indicated that rent for unsubsidized properties would not exceed $435 for a two-bedroom unit and $495 for a three-bedroom unit. Based on the income approach, Colonial Village valued its property at $916,000, based on its HUD financial statements and an estimated capitalization rate. The BOR rejected the owner's opinion, finding that the capitalization rate was too high and that the expenses were not based on the market. Accordingly, the BOR retained the auditor's valuation.

{¶ 18} At the BTA, Colonial Village offered an appraisal report and supporting testimony from appraiser Charles Snyder. Snyder rejected the cost approach as "precluded from consideration due to the chronological and effective age of the physical improvements." Snyder used five comparables for a comparative-sales analysis and conducted an income-capitalization analysis. The latter relied on the use of rent comparables to arrive at an economic rent figure of $445–$495 per month. Snyder used actual expenses in his income approach and estimated a capitalization rate. After weighting the income approach at 80 percent and the comparative-sales approach at 20 percent, Snyder arrived at a value of $917,000 (net of furniture, fixtures, and equipment). The BTA found significant defects in the comparative-sales approach and faulted the income-capitalization analysis because the vacancy loss and expense figures were unsupported. Based on its findings, the BTA rejected the appraisal, accepted the BOR's analysis of the evidence presented to it, and retained the auditor's cost-based valuation of the property.

{¶ 19} The BTA possesses "wide discretion in weighing the evidence and judging the credibility of witnesses." *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, 822 N.E.2d 790, ¶ 15. In this case, the BTA found specific flaws in the appraiser's conclusion of value, and we defer to those specific findings. In doing so, we conclude that the BTA was justified in declining to accept the appraiser's conclusion of value. This case presents a further question: whether, having validly rejected Colonial Village's proposed valuation of the property, the BTA could properly revert to the auditor's cost-based valuation. Colonial Village contends that the BTA committed legal error in doing so. We agree.

{¶ 20} For subsidized housing, we generally disfavor appraisals based on the cost approach. *Canton Towers, Ltd. v. Stark Cty. Bd. of Revision* (1983), 3 Ohio

St.3d 4, 7, 3 OBR 302, 444 N.E.2d 1027 ("Without a federal loan guarantee, favorable mortgage terms, rent subsidy, and income tax advantages, the cost of construction for such housing would be prohibitively expensive"); *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 22, 523 N.E.2d 826 ("The apartment buildings herein were constructed at a cost greater than could be justified by market rents"); *Sunset Square, Ltd. v. Miami Cty. Bd. of Revision* (1990), 50 Ohio St.3d 42, 44, 552 N.E.2d 632 (*Canton Towers* cited as "rejecting the cost approach as inapplicable" when dealing with subsidized housing). A "cost approach" appraisal analysis is " ' "based on the proposition that the informed purchaser would pay no more than the cost of producing a substitute property with the same utility as the subject property." ' " *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision* (1984), 12 Ohio St.3d 270, 271, 12 OBR 347, 466 N.E.2d 909, fn. 1, quoting Encyclopedia of Real Estate Appraising (3d Ed.1978) 65, quoting Boyce, Real Estate Appraisal Terminology (1975) 53.

{¶ 21} Colonial Village's appraiser stated that a cost approach is "precluded from consideration due to the chronological and effective age of the physical improvements." The buildings at issue were constructed in 1981 and were 21 years old on the tax lien date, January 1, 2003. The BTA found no fault with this portion of Colonial Village's evidence, and the expert testimony accords with the general theory that "[b]ecause cost and market value are usually more closely related when properties are new, the cost approach is important in estimating the market value of new or relatively new construction." Appraisal Institute, The Appraisal of Real Estate (12th Ed.2001) 354.

{¶ 22} Our disfavor of the cost approach in the appraisal of subsidized housing and the age of the housing militate against retaining the county's valuation of the property.[2] The BTA did not articulate why a departure from these general principles is justified. Instead, it reverted to the cost-based valuation solely on the ground that Colonial Village failed to meet its burden of persuasion. Given the record in this case, we conclude that the BTA committed legal error.

{¶ 23} "The burden is on the taxpayer to prove his right to a deduction," and the taxpayer "is not entitled to the deduction claimed merely because no evidence is adduced contra his claim." *W. Industries, Inc. v. Hamilton Cty. Bd. of Revision* (1960), 170 Ohio St. 340, 342, 10 O.O.2d 427, 164 N.E.2d 741. "Where the BTA rejects the evidence presented to it as not being competent and probative, or not credible, and there is no evidence from which the BTA can

---

2. The auditor and the BOR argue at pages 17 and 18 of their brief that the auditor's valuation "could just as easily be the result of a combination" of various techniques, rather than a cost-based approach as indicated on the property record card. We decline to accept this invitation to speculate that the property record card means anything other than what it says. If the auditor believed it important to clarify the method used, he should have presented evidence on that point.

independently determine value, it may approve the board of revision's valuation, without the board of revision's presenting any evidence." *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 49, 689 N.E.2d 22. We have also held that decisions of boards of revision should not be accorded a presumption of validity. *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 15, 665 N.E.2d 1098; *Springfield Local Bd. of Edn. v. Summit Cty. Bd. of Revision* (1994), 68 Ohio St.3d 493, 494, 628 N.E.2d 1365. The BTA must " 'independently weigh and evaluate all evidence properly before it' " in order to " 'make an independent determination concerning the valuation of the property at issue.' " *Columbus Bd. of Edn.*, 76 Ohio St.3d at 16, 665 N.E.2d 1098, quoting *Black v. Cuyahoga Cty. Bd. of Revision* (1985), 16 Ohio St.3d 11, 13, 16 OBR 363, 475 N.E.2d 1264.

{¶ 24} We conclude that the record in this case contains sufficient evidence to trigger the BTA's duty to undertake an independent valuation of the property. Our cases that address subsidized housing emphasize the propriety of an income approach calculated with "due regard for market rent and current returns on mortgages and equities." *Alliance Towers,* 37 Ohio St.3d 16, 523 N.E.2d 826, paragraph two of the syllabus. The record contains ample information for the BTA to "determine the taxable value of the property." See R.C. 5717.03. The owner's opinion of value presented to the BOR and the appraisal report presented to the BTA contain market rent data. The record also contains evidence of market expenses, which can be used in valuing the property. The BTA faulted the vacancy-loss figure used by the appraiser, but alternatives are available. Colonial Village's representative at the BOR hearing testified as to actual vacancy during the relevant time. The BTA could rely on this information, or it could omit any allowance for vacancy loss. In valuing subsidized housing for real property taxation, an income approach to valuation that uses market rents and expenses is preferable to a cost approach, even without a full accounting for vacancy loss. Finally, the BTA made no adverse findings as to the appraiser's derivation of a capitalization rate, and the appraisal report contains evidence of the appraiser's direct capitalization and band-of-investment analyses, including the discussion of mortgages and equities.

{¶ 25} We reverse the decision of the BTA and remand with instructions that the BTA "determine the taxable value of the property," as required by R.C. 5717.03.

Decision reversed
and cause remanded.

MOYER, C.J., LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

CUPP, J., concurs in judgment only.

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, and Susan K. French–Skaggs, for appellant.

Rich, Crites & Dittmer, L.L.C., and James R. Gorry, for appellees.