H.R. Options, Inc., Appellee, *v.* Zaino, Tax Commr., Appellant.

[Cite as *H.R. Options, Inc. v. Zaino,*
100 Ohio St.3d 373, 2004-Ohio-1.]

(No. 2002–1477—Submitted October 8, 2003—Decided January 7, 2004.)

Lundberg Stratton, J.

{¶ 1} H.R. Options, Inc. ("HRO") is a California-based human resources firm that provides third-party employment services for its clients. HRO serves as the employer of record for persons whose services its clients want to utilize but whom the clients do not want to hire as employees or as independent contractors. By having HRO hire the desired personnel and furnish them for the clients' use, the clients are able to avoid various potential tax and pension problems. HRO hires persons referred to it by the clients, puts them on its own payroll, and provides them for use by its clients.

{¶ 2} HRO pays the employee's wages, as well as all the taxes and other costs associated with being an employer. HRO bills the client for reimbursement of the wages and all other costs (taxes, FICA, etc.) it pays as the employer. As compensation for its services, HRO also charges its clients a fee, which is a mark-up based on the wages paid to the employee and other factors.

{¶ 3} HRO and the five clients it had in Ohio entered into written agreements that provided that the client desired to retain HRO as the common-law employer of employees with appropriate qualifications and skills to provide services to be utilized by the clients. The agreements further provided that the clients would refer candidates to HRO for employment. HRO does not fill the employment needs of any of its clients from its own pool of available employees. Most of the agreements between HRO and its clients provided for a term of two or three years. However, some of the contracts included the right to terminate 30 days after written notice.

{¶ 4} The agreements between HRO and its employees provided that the employees could be terminated at any time, without cause, with or without notice, at the option of HRO or the employee. With only a few exceptions, the employment agreements between HRO and the employees it provided contained a starting date, but no ending date.

{¶ 5} The Tax Commissioner assessed HRO a sales tax for the audit period January 1, 1993, through June 30, 1997. HRO filed a petition for reassessment. After a hearing, the Tax Commissioner affirmed his assessment, finding that HRO services constituted an "employment service" as defined in R.C. 5739.01(JJ). The Tax Commissioner further found that HRO's contracts with its clients did not meet the requirements for exclusion from the tax on "employment service" found in R.C. 5739.01(JJ)(3). HRO appealed to the BTA.

{¶ 6} The BTA reversed the Tax Commissioner, finding that HRO's activities did not meet R.C. 5739.01(JJ)'s definition of an "employment service." The BTA found that HRO did not provide or supply personnel as required by that definition. Instead, the clients referred personnel to HRO. Moreover, even if HRO were an employment service, the employees were assigned to the clients on a permanent basis, within the meaning of the exclusion contained in R.C. 5739.01(JJ)(3), because the employees were never reassigned by the service provider and were assigned for an indefinite duration.

{¶ 7} This cause is before the court upon an appeal as of right.

{¶ 8} In his brief, the Tax Commissioner contends that the BTA did not have jurisdiction to consider whether the transactions between HRO and its clients constituted an employment service. Although the Tax Commissioner raised this jurisdictional issue for the first time in his brief to this court, we will treat the Tax Commissioner's contention as preserved because a party cannot waive subject-matter jurisdiction, regardless of procedural deficiencies. *Mid–States Terminal, Inc. v. Lucas Cty. Bd. of Revision* (1996), 76 Ohio St.3d 79, 82, 666 N.E.2d 1077.

{¶ 9} When an appeal is filed with the BTA from a final determination of the Tax Commissioner, R.C. 5717.02 requires that the notice of appeal "shall also specify the errors therein complained of." This court has previously stated that in resolving questions regarding the effectiveness of a notice of appeal, we are not disposed to deny review by a hypertechnical reading of the notice. *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 197, 625 N.E.2d 597. We find that under a fair reading, the notice of appeal filed by HRO with the BTA does raise the issue of whether HRO was providing an employment service and, therefore, we deny the Tax Commissioner's challenge to the BTA's jurisdiction to decide the issue of whether HRO was providing an employment service.

{¶ 10} The Tax Commissioner next contends that the BTA erred in finding that the services provided by HRO do not constitute an "employment service." R.C. 5739.01(JJ) defines the term "employment service" as "providing or supplying personnel, on a temporary or long-term basis, to perform work or labor under the supervision or control of another, when the personnel so supplied receive their wages, salary, or other compensation from the provider of the service."

{¶ 11} When the BTA considered the facts of this case, it determined that its decision in *Moore Personnel Serv., Inc. v. Zaino* (Apr. 12, 2002), B.T.A. No. 99–R–2098, 2002 WL 595178, was dispositive. The business of Moore Personnel Services, Inc. was conducted in essentially the same manner as that of HRO. In both cases, the taxpayers served as employer of record for employees that were sent to them by their clients. In both cases, the taxpayers contended that, since they did not recruit the employees, they were not "providing" or "supplying" the personnel within the meaning of R.C. 5739.01(JJ).

{¶ 12} This court decided *Moore Personnel Serv., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, after HRO had filed this appeal. We reversed the BTA's decision in *Moore* and held that Moore's activities constituted an "employment service." In that decision we stated:

{¶ 13} "The relevant facts are that Moore was providing and supplying personnel on a temporary or long-term basis to perform work for another. The personnel supplied by Moore were Moore's employees, although they worked under the supervision or control of Moore's clients. The personnel supplied to Moore's clients received their compensation from Moore, the 'provider of the service.' Thus, Moore's services meet the definition of 'employment service' set forth in R.C. 5739.01(JJ)." *Moore Personnel Serv., Inc.* at ¶ 20.

{¶ 14} The facts in this case are essentially identical to those in *Moore*. The only basis for the BTA's decision that HRO's activities did not constitute an employment service was its decision in *Moore*, and since that decision has been reversed by this court, the BTA's decision finding that HRO's activities did not constitute an "employment service" is also reversed. Thus, we conclude that HRO is an employment service under R.C. 5739.01(JJ).

{¶ 15} Because HRO's activities constitute an "employment service," then the separate and distinct issue arises of whether the BTA erred in finding that HRO's services were excluded from the definition of "employment service" by R.C. 5739.01(JJ)(3), which became effective July 1, 1993. Am. Sub.H.B. No. 152, 145 Ohio Laws, Part III, 4297. After setting forth the definition for "employment service," R.C. 5739.01(JJ) sets forth four exclusions. The exclusion at issue here, R.C. 5739.01(JJ)(3), excludes from the definition of "employment service," and therefore from taxation, transactions where the provider of the service is:

{¶ 16} "(3) Supplying personnel to a purchaser pursuant to a contract of at least one year between the service provider and the purchaser that specifies that each employee covered under the contract is assigned to the purchaser on a permanent basis."

{¶ 17} Because R.C. 5739.01(JJ)(3) represents an exclusion from taxation, it must be construed most favorably to the taxpayer.

{¶ 18} Thus, to be excluded from taxation under R.C. 5739.01(JJ)(3), an employment service must prove two elements: (1) a contract of at least one year between the service provider and the purchaser, and (2) a contract that specifies that each employee covered under the contract is assigned to the purchaser on a permanent basis.

{¶ 19} The Tax Commissioner does not challenge element one above and the parties agree that the word "permanent" does not need to appear in the contract. However, the Tax Commissioner does challenge the BTA's decision as to element two.

{¶ 20} The primary dispute between the parties in this case centers on the word "permanent" in R.C. 5739.01(JJ)(3). To fill the void for a definition of "permanent" in R.C. 5739.01(JJ)(3), the BTA found that permanency connotes the expectation that the employees supplied are intended to remain for the contract-ed-for period. Thus, the BTA determined permanency based on whether the employees are ever reassigned by the service provider.

{¶ 21} We do not find that such an interpretation represents the plain or workable meaning of the word "permanent" within the context of R.C. 5739.01(JJ)(3). We start with the understanding that an employee assigned on a permanent basis need not be assigned to an employer forever. We believe that in the context of R.C. 5739.01(JJ)(3), assigning an employee on a permanent basis means assigning an employee to a position for an indefinite period, i.e., the employee's contract does not specify an ending date and the employee is not being provided either as a substitute for a current employee who is on leave or to meet seasonal or short-term workload conditions. Thus, both the contract and the facts and circumstances of the employee's assignment are factors that must be reviewed to determine whether the employee is being assigned on a permanent basis.

{¶ 22} When the Tax Commissioner's agents examine an employment contract, they must be able to determine at that time whether an employee has been assigned on a permanent basis. The contract, along with the facts and circumstances of the assignment, should permit the Tax Commissioner's agent to determine permanency. The actual length of the employee's assignment is only one of the factors to be used. Where the assignment is of a seasonal nature or serves to meet short-term workload conditions, these factors are also relevant.

{¶ 23} In this case, the contracts between HRO and its clients incorporated a blank, standardized employee contract form. However, a review of the actual employee contracts is required to determine whether the employee was assigned for a definite or an indefinite term. The employee contracts for HRO client Elkem Metals Company set forth a starting date but no ending dates. Three of the 10 contracts for client Henkel Corporation set forth starting and ending dates. The remaining contracts for employees referred by Aris Isotoner, Swarovski American Ltd., and Champion Jogbra set forth starting but no ending dates.

{¶ 24} The Elkem and Henkel contracts (with the exception of the three with ending dates) provided for assignments "on a permanent basis" within the meaning of R.C. 5739.01(JJ)(3). Thus, these transactions are excluded from taxation.

{¶ 25} Nearly all of the 30 Iris Isotoner contracts refer to the positions as "seasonal," and the testimony of HRO's president clearly sets forth that employees assigned that client by HRO were seasonal employees. As such, these employees cannot be considered as being assigned on a permanent basis. Whether the employees assigned to Swarovski and Champion Jogbra were seasonal only is not clear.

{¶ 26} For all of the foregoing reasons, we hold that the decision of the BTA that HRO is not an employment service is unreasonable and unlawful and we reverse it. As regards the application of the R.C. 5739.01(JJ)(3) exclusion to HRO's transactions with Elkem Metals and Henkel (with the exception of the three contracts with starting and ending dates), we conclude that the decision of the BTA is reasonable and lawful, but for reasons different from those stated by the BTA. As regards the application of the R.C. 5739.01(JJ)(3) exclusion to HRO's transactions with Aris Isotoner, and the three Henkel contracts with starting and ending dates, we hold that the decision of the BTA is unreasonable and unlawful and reverse it. Finally, as regards the BTA's decision regarding the Swarovski and Champion Jogbra contracts, we remand that portion of the cause to the BTA for further testimony to determine whether either or both of those contracts were for seasonal employees.

Decision affirmed in part,<br>reversed in part<br>and cause remanded in part.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

---

Bricker & Eckler, L.L.P., and Mark A. Engel, for appellee.

Jim Petro, Attorney General, and Robert C. Maier, Assistant Attorney General, for appellant.