BAY MECHANICAL & ELECTRICAL CORPORATION, APPELLANT, *v.* TESTA,

TAX COMMR., APPELLEE.

[Cite as *Bay Mechanical & Elec. Corp. v. Testa,*

**133 Ohio St.3d 423, 2012-Ohio-4312.]**

*Sales tax—R.C. 5739.01—Taxpayer burden—Decision affirmed.*

(No. 2011-1197—Submitted August 22, 2012—Decided September 26, 2012.)

APPEAL from the Board of Tax Appeals, No. 2008-K-1687.

_____

**Per Curiam.**

**{¶ 1}** In this case, Bay Mechanical & Electrical Corporation, a specialty mechanical contractor, challenges a sales-tax assessment issued by the tax commissioner with respect to Bay's purchase of allegedly taxable "employment services." During the audit period, which extends from January 1, 2003, through December 31, 2005, Bay purchased the services from two entities. Bay treated the personnel supplied by Tradesmen International, Inc. and Construction Labor Contractors ("CLC") as "permanent-assignment" employees and therefore regarded the attendant employment services as exempt pursuant to R.C. 5739.01(JJ)(3).[1]

**{¶ 2}** On audit, the commissioner overruled Bay's exempt treatment of the transactions on the primary ground that Bay had failed to supply "facts and circumstances" evidence in relation to the assignment of individual employees.

_____

1. After the audit period at issue, the General Assembly amended the definition of "employment service" at R.C. 5739.01(JJ) and added an exception at paragraph (5). Sub.H.B. No. 293, 151 Ohio Laws, Part V, 8842, 8864. The amendment is not material to the analysis of the statute in this opinion, and it did not change the language of paragraph (3) at all. In this opinion, however, R.C. 5739.01(JJ) and 5739.01(JJ)(3) refer to the version in effect during the audit period. 145 Ohio Laws, Part III, 4009, 4297.

On appeal, the BTA found that the testimony and the summary exhibits offered by Bay were insufficient to prove entitlement to the exemption, with the result that the BTA affirmed the commissioner's denial of the exemption. *Bay Mechanical & Elec. Corp. v. Levin*, BTA No. 2008-K-1687, 2011 WL 2446198, *3-4 (June 14, 2011).

{¶ 3} Before this court, Bay renews its contention that the language of its contracts and the testimony offered satisfy the one-year and permanent-assignment criteria of R.C. 5739.01(JJ)(3). We disagree, and we therefore affirm the decision of the BTA.

## I. Course of proceedings

{¶ 4} Bay Mechanical & Electrical Corporation is a construction contractor that provides various services such as plumbing, piping, HVAC, electrical wiring, and maintenance work. Bay directly employed "core employees" to carry out its projects, but additionally relied on labor supplied by third parties—in other words, Bay purchased "employment services," which are generally subject to sales tax unless specifically excepted.

{¶ 5} During the audit period, which stretches from January 1, 2003, through December 31, 2005, Bay held a direct-payment permit. Although the sales-tax law usually requires vendors to charge the tax to their consumers and then remit the collected tax to the state, see R.C. 5739.03 and 5739.29, another section—R.C. 5739.031—empowers the commissioner to issue direct-payment permits to consumers. Under such a permit, the consumer files monthly sales-tax returns that ascertain its own liability to pay the tax on its own purchases.

*1. The audit and assessment*

{¶ 6} The tax commissioner commenced his audit of Bay's purchases with a notification letter dated February 13, 2006. Over the course of several months, the tax agent worked out the method for the audit with Bay. On December 20, 2006, Bay representatives met with the tax agent at Bay's Lorain

headquarters, and during that meeting, the taxability of the purchases from Tradesmen and CLC was a principal subject of discussion. A second meeting on February 20 resolved several issues but not the disagreement regarding the taxability of the employment services that Bay had purchased. Bay argued that the Tradesmen and CLC transactions were exempt as "permanent assignment" sales under R.C. 5739.01(JJ)(3). The parties agreed that Bay would produce additional information for the tax agent's review. That additional information would have included employment-service invoices from Tradesmen and CLC as well as "job cost summary sheets and supporting accrual information."

{¶ 7} By letter dated March 7, 2007, Bay's controller announced that Bay had decided not to produce the additional information. The letter recited that Bay had furnished to the tax agent the employment-service contracts between it and Tradesmen and CLC and that Bay had paid sales tax on employment services as to specified temporary employees supplied by other vendors. Bay took the position that it had "followed the intent and the letter of the law with regard to leased construction labor" and asked the tax agent to proceed to issue his preliminary report without the benefit of additional documentation.

{¶ 8} The tax agent's audit remarks reveal the department's own position. After reviewing the two CLC contracts and the three Tradesmen contracts, the tax agent concluded that two of the Tradesmen contracts were disqualified as a basis for exemption because they referred to nonpermanent assignments. In reviewing the other contracts, the agent first confirmed the existence of clauses that established that the contracts were "for at least one year" as required by R.C. 5739.01(JJ)(3). Next, the agent stated that although the remaining three contracts referred to indefinite or permanent assignment of the employees, they did not qualify as a basis for exemption because they failed to specify those employees or positions subject to such permanent or indefinite assignment. With respect to Tradesmen, the additional question arose whether

employees had been assigned pursuant to the temporary-service contract or the permanent-assignment contract.

{¶ 9} As a result of the audit, the tax department issued a use-tax assessment against Bay on May 25, 2007, calling for payment of $105,078.77 of use tax, of which $74,574.65 related to employment services.[2] In addition to the tax, penalties and interest were assessed.

*2. Petition for reassessment*

{¶ 10} On July 17, 2007, Bay filed its petition for reassessment, which challenged the employment-services portion of the assessment and stated that Bay was not requesting a hearing. An attorney with the tax department's Office of Chief Counsel wrote to Bay's counsel, noting that the audit agent had requested "additional information, including comprehensive invoice and time sheet information for employees supplied to the petitioner by Tradesmen International, Inc. and Construction Labor Contractors." The attorney stated that the information was "necessary in order to determine whether or not the employees were placed with the petitioner on a permanent basis per *H.R. Options, Inc. v. Zaino* (2004), 100 Ohio St.3d 373, 800 N.E.2d 740," and requested that Bay supply it. After receiving a second, similar letter, Bay's counsel responded that Bay "has declined to submit any additional information, including comprehensive invoice and time sheet information for employees supplied to Bay Mechanical by Tradesmen International, Inc. and Construction Labor Contractors," while also asserting that "[t]he information was provided to the auditor during the course of the audit." The record does not support the latter statement.

---

2. The commissioner assessed the tax owed as use tax, not as sales tax. The distinction has no practical significance in this context, because the undisputed realization of the benefit of the employment services within Ohio means that the purchases entail a taxable "use" as long as the separate sales-tax obligation remains unpaid. *See* R.C. 5741.02(C)(1) (transactions subject to the sales tax are exempted from the use tax, *but only if the sales tax has been paid*). Moreover, if the purchases are excepted from sales tax, there is no use tax, either. R.C. 5741.02(C)(2).

{¶ 11} On July 22, 2008, the tax commissioner issued his final determination, which denied the exemption on the ground that Bay had failed to supply "facts and circumstances" evidence in the form of "comprehensive invoice and time-sheet information" and that Bay had failed to submit the tax department's employment-services questionnaire. The commissioner additionally faulted Bay for not supplying contracts with individual employees. The commissioner concluded that he could not grant the exemption because Bay had "not supplied information regarding the employees' contracts or the facts and circumstances regarding the employees' assignments."

*3. The BTA appeal*

{¶ 12} Bay appealed to the BTA and, at the BTA hearing, presented the testimony of Bay's controller along with four summary exhibits. The exhibits (1) identified the assigned employees by name, (2) associated each employee with either Tradesmen or CLC, (3) set forth the precise duration of each employee's assignment, and (4) stated the reason each employee had stopped working for Bay. The controller testified that she had prepared the documents by referring to the employment-service invoices received from Tradesmen and CLC—documents that the tax agent had requested during the audit but that were not produced.[3]

{¶ 13} The tax commissioner objected to the introduction of the exhibits on the grounds that the invoices themselves constituted the evidence, but the board received the exhibits and made them a part of the record.

{¶ 14} On June 14, 2011, the BTA issued its decision. The BTA stated that Bay had the burden to prove that each employee covered under the contracts was assigned to Bay on a permanent basis—meaning that the personnel were assigned for a indefinite period and not assigned either as a substitute for an

---

3. In its reply brief, Bay argues that its production of the invoices in discovery at the BTA should substitute for its failure to produce them during the audit. We address this contention in the legal analysis below.

employee who was on leave or to meet seasonal or short-term workload conditions. *Bay Mechanical*, BTA No. 2008-K-1687, 2011 WL 2446198, *2, citing *H.R. Options, Inc. v. Zaino*, 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, ¶ 21-22. The BTA found that the controller's testimony and exhibits, presenting as they did information "gleaned from records not before us," did not rise to the level of proof required by *H.R. Options*. Accordingly, the board affirmed the final determination of the commissioner, and the cause is now before us on an appeal of right.

## II. Legal Analysis

{¶ 15} In a claim for tax exemption, the "onus is on the taxpayer to show that the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim." *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach*, 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (1990). And when a decision issued by this court furnishes a definitive construction of the exemption statute, we typically reject an exemption claim that would expand the exemption beyond the scope described in that decision. *See id*. at ¶ 22.

{¶ 16} Also significant are two settled propositions that govern, respectively, the BTA's review of the tax commissioner's determinations and our review of a BTA decision. First, before the BTA, "[t]he Tax Commissioner's findings 'are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful.' " *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7, quoting *Nusseibeh v. Zaino*, 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10. It was therefore Bay's burden to rebut the presumptive validity of denying the exemption by affirmatively proving its entitlement to it. Second, under R.C. 5717.04, the question for our determination is whether the BTA's decision is reasonable and lawful, and because "[t]he function of weighing evidence and determining credibility belongs

to the BTA, * * * our review of that aspect of its findings" applies the highly deferential abuse-of-discretion standard. *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10.

{¶ 17} With these preliminaries in mind, we turn to the exemption claim at issue. Effective January 1, 1993, Ohio imposes sales and use tax on the provision of "employment services." Am.Sub.H.B. No. 904, 144 Ohio Laws, Part IV, at 6598, 6688-6689, 6698, and 6797, codified at R.C. 5739.01(B)(3)(k) and 5739.01(JJ). We have held that a service, to be taxable pursuant to the definition of employment services at R.C. 5739.01(JJ), must meet three requirements: "(1) it must provide or supply personnel on a temporary or long-term basis, (2) the personnel must perform work or labor under the supervision or control of another, and (3) the personnel must receive their wages, salary, or other compensation from the provider of the service." *Moore Personnel Serv., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, ¶ 14. There is no dispute that these elements are present in the transactions at issue.

{¶ 18} Shortly after enactment of the sales tax on employment services, the General Assembly decided to create an additional exception for "permanent assignment" employees. Am.Sub.H.B. No. 152, 145 Ohio Laws, Part III, at 4297, codified at R.C. 5739.01(JJ)(3). Under that provision, "employment service" did not include "[s]upplying personnel to a purchaser pursuant to a contract of at least one year between the service provider and the purchaser that specifies that each employee covered under the contract is assigned to the purchaser on a permanent basis." In *H.R. Options*, 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, ¶ 21, we explained that "permanent" in the context of (JJ)(3) means that an employee is "assign[ed] to a position for an indefinite period," which in turn means that (1) the assignment has no specified ending date and (2) the employee is not being provided either as a substitute for a current employee who is on leave or to meet seasonal or short-term workload conditions. *Id.*, ¶ 21. We also held that R.C.

5739.01(JJ)(3) was to be treated as an exception or exemption from taxation, with the result that it must be strictly construed against the taxpayer's claim for tax relief. *H.R. Options*, ¶ 17, clarified by *H.R. Options, Inc. v. Wilkins*, 102 Ohio St.3d 1214, 2004-Ohio-2085, 807 N.E.2d 363, ¶ 2.

{¶ 19} *H.R. Options* is additionally significant because we construed the exemption as turning on the facts of each employee's assignment rather than on the presence of "magic words" in the employment-service agreements themselves. *H.R. Options*, 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, ¶ 21. Instead of requiring that the contracts recite "permanent" (or "indefinite") assignment,[4] we viewed the language of the contracts as one element that, along with the facts and circumstances of the individual assignments, established whether the provider was truly "supplying personnel" in an exempt manner. Indeed, instead of requiring the commissioner to focus on contract language in *H.R. Options*, we directed that official to look at two types of evidence when auditing a claim of exemption: (1) the employment-services contract itself, to see whether it is consistent with the requirements set forth at (JJ)(3), and (2) the facts and circumstances of the assignment, in order to ascertain whether in actual practice the assignment of the particular employees was "indefinite" in character, or whether the assignments were seasonal, substitutional, or designed to meet short-term workload conditions. *Id.*, ¶ 22.

{¶ 20} These legal standards furnish the basis for our analysis of Bay's appeal.

---

4. As Bay points out, the *H.R. Options* contracts contained no such language themselves. The contract language in that case was significant to the extent that it provided a contract term of at least one year and that it did not otherwise conflict with the conclusion that the personnel were assigned on a permanent basis.

*1. Bay's argument that its contract language entitles it to exemption without regard to the facts and circumstances is wrong*

**{¶ 21}** Bay argues that "the plain language of the [employment service contracts] alone is sufficient" to establish the exemption with respect to the purchase of employment services associated with employees assigned under those contracts. In Bay's view, the mere presence of "permanent" and "indefinite" assignment terminology in its contracts is dispositive: no inquiry into facts and circumstances of the assignment of individual employees is necessary.

**{¶ 22}** The foregoing discussion establishes that Bay is mistaken. In *H.R. Options,* 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, the claim for exemption was potentially viable even though the contracts did not contain the magic words. *Id*. at ¶ 21. That was so because *H.R. Options* viewed contract language as merely one important element of establishing entitlement to the exemption. *Id*.

**{¶ 23}** Just as the absence of magic words is not dispositive of a permanent-assignment claim, neither does the presence of those words establish entitlement to the exemption as a matter of law. In this regard, *H.R. Options* adopts a consistent theme sounded by the BTA itself when reviewing exemption claims: when "determining whether an exception or exemption to taxation applies, it is not just the form of a contract that is important," but instead, the "crucial inquiry becomes a determination of what the seller is providing and of what the purchaser is paying for in their agreement." *Excel Temporaries, Inc. v. Tracy*, BTA No. 97-T-257, 1998 WL 775284, *2 (Oct. 30, 1998) (applying the permanent-assignment exception before *H.R. Options*); *see also Stein, Inc. v. Tracy*, BTA No. 92-T-1388, 1997 WL 704479, *16 (Nov. 7, 1997) ("not just the form of the contract" is important in determining whether [the sale-for-resale] exception applies, but also "what actually is being done by the parties involved"), 84 Ohio St.3d 501, 705 N.E.2d 676 (1999). Despite R.C. 5739.01(JJ)(3)'s

explicit reference to contract language, the statute justifies the focus on "what actually is being done" by requiring that the provider actually "supply[ ] personnel" on a permanent-assignment basis.

{¶ 24} Accordingly, *H.R. Options* teaches that supplying personnel on an exempt basis under R.C. 5739.01(JJ)(3) means that the employees are actually provided to work for an indefinite period—i.e., that they are not serving as seasonal workers, as substitutes for regular employees on leave, or as labor needed to meet a short-term workload. It follows that a contract can contain all the right language, but if a particular employee *is* seasonal, substitutional, or on a short-term-workload assignment, the provider is not "supplying" that employee "pursuant to" the agreement for purposes of qualifying for exemption under R.C. 5739.01(JJ)(3).

*2. The existence and production of contracts with individual employees*
*is not a necessary condition for exemption under R.C. 5739.01(JJ)(3)*

{¶ 25} In his final determination, the commissioner faults Bay for not producing contracts with individual employees. Although the commissioner appears to have abandoned this contention, we think it prudent to address and dispose of it.

{¶ 26} In *H.R. Options*, 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, the commissioner audited and assessed against a *vendor* of employment services and, as it happened, that vendor had written agreements with the personnel that it supplied to the consumers of its employment services. Those contracts with individual employees became important pieces of "facts and circumstance" evidence in determining the case. By contrast, the present case presents an audit and assessment of a *consumer* of employment services. As a result, the taxpayer would not in the ordinary course have possession of such contracts, even if they existed. Nor is there any reason why such contracts are a necessary element for claiming exemption, especially given the statute's explicit

focus on the employment-services contracts and its omission of any mention of employee contracts.

{¶ 27} We hold that the existence of contracts with individual employees was not a necessary condition for exemption under R.C. 5739.01(JJ)(3).[5]

*3. Claiming an exemption in the context of a direct-payment audit*
*calls for producing appropriate documentation on request*

{¶ 28} It is significant that the present claim for exemption from the sales tax arises in the context of an audit of purchases made by a taxpayer that holds a direct-payment permit under R.C. 5739.031. As noted, that section authorizes the issuance of permits that allow the taxpayer to avoid paying sales tax to vendors and instead report and remit tax on its purchases directly to the state.

{¶ 29} Under R.C. 5739.031(D), the holder of a direct-payment permit has the duty to "keep and preserve suitable records of purchases together with invoices of purchases, bills of lading, asset ledgers, depreciation schedules, transfer journals, and such other primary and secondary records and documents in such form as the commissioner requires." As for the tax auditor, R.C. 5703.19(A) authorizes the commissioner and his agents to "inspect books, accounts, records, and memoranda of any person or public utility subject to [the] laws" that the tax commissioner is required to administer. Additionally, *H.R. Options*, 100 Ohio St.3d 373, 2004-Ohio-1, 800 N.E.2d 740, unequivocally establishes that "both the contract and the facts and circumstances of the employee's assignment * * * must be reviewed to determine whether the employee is being assigned on a permanent basis." *Id*. at ¶ 21.

{¶ 30} In this case, the commissioner fulfilled his duty by specifically requesting facts-and-circumstances evidence—notably, the employment-service invoices. But Bay made a deliberate decision to refuse to honor that request.

---

5. If such contracts do exist and are in the possession of the taxpayer, however, they ought to be produced on request.

Under these circumstances, the commissioner acted reasonably and lawfully when he denied the exemption because of Bay's failure to produce the requested pertinent documentation.

{¶ 31} In so holding, we acknowledge that cases may arise where a taxpayer's good-faith efforts to produce documentation could lead to failure. In a given case, for example, a fire may have destroyed the relevant records or the records may be in the possession of someone other than the taxpayer and unattainable by the taxpayer. Such circumstances might in a proper case justify suspending the requirement that facts-and-circumstances evidence be produced and reviewed. Nor do we hold that a taxpayer must comply with arbitrary requests by the commissioner—indeed, the commissioner's power to require production is constrained by the principle that the information request be reasonably calculated to lead to the production of matter relevant to whether personnel have been permanently assigned within the intendment of R.C. 5739.01(JJ)(3) as construed by *H.R. Options*.

{¶ 32} This case, however, presents a straightforward refusal by Bay to produce clearly relevant documents on request, some of which the taxpayer itself later used to prepare summary exhibits at the BTA. The commissioner therefore acted appropriately in denying the exemption.

*4. The BTA acted reasonably and lawfully in affirming*

*the commissioner's denial of the exemption*

{¶ 33} As discussed, at the BTA, Bay took a step beyond its reliance on the employment-service contracts when it presented not only the testimony of its controller, but also four summary exhibits concerning the individual assignments that were referable to the contracts at issue. The summary exhibits purport to show the names and periods of employment of particular employees pursuant to the employment-service contracts. The testimony establishes that their foundation lies partly in invoices that the tax agent had previously requested without success.

12

The BTA held that the evidence was not sufficient because of its summary nature, with the primary documentation not before the board. *Bay Mechanical*, BTA No. 2008-K-1687, 2011 WL 2446198, *3-4. In other words, the BTA decided not to accord evidentiary weight to the exhibits.

{¶ 34} Because (as already discussed) the BTA's determinations of the credibility of witnesses and its weighing of the evidence are subject to a highly deferential abuse-of-discretion review on appeal, we will reverse only if we find an abuse of discretion. *HealthSouth Corp.*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10. In two respects, the *HealthSouth* decision is instructive in applying the abuse-of-discretion standard in this context.

{¶ 35} First, although the taxpayer's evidence in *HealthSouth* showed substantial evidential weaknesses, we nonetheless affirmed the BTA's decision to order the commissioner to issue a reduced assessment based on the totality of the record. The same broad deference that we exercised toward the BTA's judgment in *HealthSouth* is merited in this case as well.

{¶ 36} Second, *HealthSouth* was a case in which the record contained not only the taxpayer's summary exhibits presented at the BTA, but other documentation to support the taxpayer's claim that had been submitted contemporaneously with the original tax returns on which the commissioner had predicated his assessment. *HealthSouth*, ¶ 23, 25-26. By contrast, the underlying facts-and-circumstances evidence in the present case was neither shown to the tax agent during the audit, nor presented in support of Bay's petition for reassessment, nor offered as an exhibit at the BTA hearing. Accordingly, the record in this case was devoid of documentation that would corroborate the summary exhibits on which Bay chose to rely.

{¶ 37} Bay suggests that by producing the underlying documentation to the tax commissioner's counsel on CDs during discovery at the BTA, it cured its earlier failure to produce it during the audit or in connection with the petition for

13

reassessment. According to Bay, it "should not be penalized for producing the requested information for the first time during proceedings before [the BTA]." But imposing a penalty is completely beside the point. The issue is: did the primary documentation ever become part of the record so that the BTA could review it in deciding Bay's appeal? It did not. Neither Bay nor the commissioner presented the documentation as a hearing exhibit. And because Bay had the burden of rebutting the commissioner's determination, it was not the commissioner's responsibility to offer the documents as evidence, even if he did obtain them through discovery. Moreover, a taxpayer at the BTA is not entitled to relief merely because the commissioner adduces no evidence contra his claim. *Higbee Co. v. Evatt*, 140 Ohio St. 325, 332, 43 N.E.2d 273 (1942).

**{¶ 38}** To show that the BTA abused its discretion by according no weight to the hearing exhibits, Bay must prove that the BTA's "attitude is unreasonable, arbitrary, or unconscionable*." J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16. Given that *H.R. Options* calls for the consideration of facts-and-circumstances evidence, that the documentation was completely withheld on audit, and that it was not offered as an exhibit at the BTA hearing, we conclude that the BTA did not act unreasonably, arbitrarily, or unconscionably when it disregarded the summary exhibits in spite of the controller's foundational testimony.

**{¶ 39}** Finally, Bay suggests that by virtue of admitting the summary exhibits under Evid.R. 1006, the BTA was constrained to accord them some evidential weight. We disagree. The Rules of Evidence are not binding at the BTA, even though they may be consulted for guidance. *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20. When a determination of the tax commissioner is appealed, the BTA convenes an evidentiary hearing, *see* R.C. 5717.02(D) ("upon the application of any interested party the board shall order the hearing of

14

additional evidence"), and at the hearing evidence is received. But just as the BTA's discretion to receive evidence is unconstrained by the Rules of Evidence, so also is its discretion to accord no weight to the evidence so received.

### III. Conclusion

{¶ 40} For the foregoing reasons, the BTA acted reasonably and lawfully when it upheld the tax commissioner's sales-tax assessment against Bay. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

O'DONNELL, J., not participating.

_____

**PFEIFER, J., dissenting.**

{¶ 41} The issue before us is a close one. It boils down to whether Bay Mechanical & Electrical Corporation has submitted evidence of its claim for an R.C. 5739.01(JJ)(3) exclusion from sales tax. Bay Mechanical believes that submitting the contracts and a summary of the work assignments at issue to the Board of Tax Appeals ("BTA"), having its controller testify regarding the contracts and work assignments before the BTA, and submitting the underlying documentation to the tax commissioner's counsel are sufficient to establish its claim. I agree.

{¶ 42} It would have been better if Bay Mechanical had submitted the information earlier—to the tax commissioner before the necessity of an appeal to the BTA. It would have been better if Bay Mechanical had submitted the underlying documentation to the BTA as well as the tax commissioner. But the bottom line is that the information is now readily available, was available at the time of the appeal to the BTA, and is sufficient to establish Bay Mechanical's entitlement to the tax exclusion. I dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Brouse McDowell, L.P.A., Joseph T. Dattilo, Thomas J. Ubbing, and Caroline L. Marks, for appellant.

Michael DeWine, Attorney General, and Sophia Hussain, Assistant Attorney General, for appellee.

_____