GALLENSTEIN, APPELLANT, *v.* TESTA, TAX COMMR., APPELLEE.

[Cite as *Gallenstein v. Testa,* 138 Ohio St.3d 240, 2014-Ohio-98.]

*R.C. 5741.02(C)(4)—Boat owner qualified for transient-use exception to use tax—BTA acted unreasonably and unlawfully in affirming tax commissioner's assessment of use tax.*

(No. 2012-1971—Submitted October 8, 2014—Decided January 22, 2014.)

APPEAL from the Board of Tax Appeals, No. 2008-A-1340.

————————————

**Per Curiam.**

**{¶ 1}** Cheryl Gallenstein appeals from a decision of the Board of Tax Appeals that determined that her "use of the subject boat does not qualify as an exempt use, pursuant to R.C. 5741.02(C)(4), because the boat is required to be registered, pursuant to the provisions of R.C. 1547.531." *Gallenstein v. Levin*, BTA No. 2008-A-1340, 2012 WL 5465162, at *5 (Oct. 23, 2012). However, because Gallenstein does qualify for the transient use exception contained in R.C. 5741.02(C)(4), the decision of the Board of Tax Appeals is unreasonable and unlawful and is therefore reversed.

*Facts and Procedural History*

**{¶ 2}** In June 2002, Cheryl and John T. Gallenstein—Kentucky residents—purchased a 44-foot Sea Ray Sundancer with twin inboards from a private owner in Indiana for $205,000. The Gallensteins did not pay any taxes on the boat in Kentucky or Indiana. Neither did they register the boat in either of those states. They docked their boat at Lighthouse Point Yacht Club in Aurora, Indiana, and titled it in Cheryl's name. With the assistance of Ruthann Eichelberger—a consultant recommended by the seller of the boat—Cheryl obtained a certificate of documentation from the United States Coast Guard that

lists her as the owner and managing owner, lists Cincinnati as the hailing port, and includes an "operational endorsement[]" of "recreation."  They chose Cincinnati as the hailing port because they thought it would be recognized if they cruised to Florida on vacation.

{¶ 3}  The evidence shows that on one occasion, John Gallenstein used an Ohio business to repair a diesel engine that he removed from the boat.  It also shows that the Gallensteins primarily operated their boat in Kentucky and Indiana waters, downriver from Cincinnati, because the water there was cleaner and less crowded.  Operating the boat downriver also provided them with a more family-friendly boating experience.  Between June 2002 and the end of the 2004 boating season, they crossed into Ohio waters between five and ten times when operating the boat.  In 2005, they operated the boat in the Ohio River once or twice, but it is not apparent from the record whether they operated it in Ohio waters during that year.  On occasion, the Gallensteins cruised upriver with guests to see the Cincinnati skyline, watch Cincinnati Reds and Bengals games from the boat, and view Cincinnati fireworks displays.  During these trips, Cincinnati police stopped their boat, boarded and inspected it, reviewed documents, and then permitted them to continue boating.

{¶ 4}  John Gallenstein contacted Eichelberger to inquire why the Cincinnati police had been stopping his boat and testified that Eichelberger told him, "You're just being harassed by the Cincinnati police.  If you don't want to have any problems, I recommend you get an Ohio sticker."  As a result, Gallenstein applied for an Ohio watercraft registration and indicated on the application that the boat would be principally used in Kentucky and Indiana waters. On May 21, 2003, the Division of Watercraft of the Ohio Department of Natural Resources ("ODNR") issued a sticker and a three-year registration certificate, listing the boat's type of use as "Pleasure."  John Gallenstein affixed

2

the sticker to the boat, and afterward, they experienced no more instances of police boarding their boat.

{¶ 5} In 2005, however, the Ohio Department of Taxation audited Gallenstein, inquiring about her purchase of the boat. Agent Dennis Woolley asked Gallenstein for verification that she paid sales or use tax for the boat in Ohio or another state and for copies of various documents. Gallenstein responded that she did not believe that Ohio taxes were due and provided some of the requested documents. She also noted:

> The vessel carries an Ohio watercraft sticker only as a precaution. Although the vessel has never been housed or moored in Ohio, several times a year I do operate the boat from its housing in Indiana to the Cincinnati central riverfront area. In this area, part of the Ohio River is within Ohio and part is in Kentucky. As boats operated in this area are often boarded and inspected by the Port of Cincinnati water officials, I obtain[ed] the Ohio sticker to be safe in operating in the area.

{¶ 6} In reply, Woolley informed her that the fact that she had docked and stored the boat at Lighthouse Point Yacht Club "would require you to have an Indiana registration and not an Ohio registration. A registration should be obtained in the state where you are principally using the waters of that state." He further stated, "[Y]ou will be required to cancel your Ohio Watercraft Registration" and provide proof of its cancellation, and he informed her that if she failed to provide proof of cancellation, the state would pursue the use tax due. Gallenstein tried to cancel the boat's Ohio registration without success. She informed Woolley that staff at ODNR's headquarters advised her that "the only

way to cancel a registration is not to renew the registration upon its expiration" and she did not intend to renew the registration after it expired.

{¶ 7} Woolley replied that Gallenstein's response "does not satisfy the State of Ohio request for proof of tax paid," and he recommended that the department assess a use tax, plus pre-assessment interest and a penalty, based on the boat's having been registered in Ohio.

{¶ 8} On November 8, 2005, the tax commissioner issued a notice of assessment for the audit period of May 1, 2003, through June 30, 2003, assessed a use tax of $12,000, imposed an $1,800 penalty, and assessed $1,252.93 in pre-assessment interest. Gallenstein petitioned for reassessment and requested remission of the penalty and the interest, asserting, among other things, that any use of the boat in Ohio constituted transient use pursuant to R.C. 5741.02(C)(4).

{¶ 9} On June 12, 2008, the commissioner issued a final determination affirming the use tax, penalty, and interest assessment. The commissioner determined that Gallenstein's use of the boat in Ohio, combined with her declaration of Cincinnati as the boat's hailing port and her registration of the boat in Ohio, "created nexus between the boat and Ohio" and that she did not qualify for the transient use exception.

{¶ 10} Gallenstein appealed to the BTA, asserting that the commissioner erred by assessing the use tax because she "had no substantial nexus with Ohio" and by not applying the transient use exception in R.C. 5741.02(C)(4) and that the penalty was improper because the underlying assessment was invalid. *Gallenstein*, 2012 WL 5465162, at \*1-2. The BTA affirmed the commissioner's decision, concluding that Gallenstein's use of the boat in Ohio satisfied the definition of use in R.C. 5741.01(C) and that she did not qualify for the transient use exception pursuant to R.C. 5741.02(C)(4).

{¶ 11} Gallenstein has now appealed to this court, urging that her registration of the boat in Ohio is not sufficient to create a taxable nexus, that she

met all the requirements of the transient use exception in R.C. 5741.02(C)(4), and that the tax commissioner should not have assessed the penalty, because the underlying assessment is improper.

{¶ 12} The tax commissioner asks this court to affirm the decision of the BTA, asserting that Gallenstein's use and enjoyment of the boat in Ohio waters, the rebuilding of the boat's engine in Ohio, and her registering of the boat in Ohio constitute use as defined in R.C. 5741.01(C), and therefore, the boat is subject to Ohio taxation. He maintains that Gallenstein does not satisfy the requirements of the transient use exception in R.C. 5741.02(C)(4) because she has "actively and within her discretion operated [her] yacht on Ohio waters, resulting in such a presence within the State that the yacht *must be registered* with the Ohio Division of Watercraft." (Emphasis added.) And the commissioner claims that her boat does not satisfy the requirements of R.C. 1547.531(B)(3), which exempts certain watercraft from Ohio registration.

{¶ 13} Accordingly, the issue in this case is whether the BTA properly imposed a use tax on Gallenstein.

### *Law and Analysis*

{¶ 14} We review a decision of the BTA to determine whether it is reasonable and lawful, and we will reverse a decision that is based on an incorrect legal conclusion. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. "Any claimed exemption from taxation 'must be strictly construed,' and the taxpayer 'must affirmatively establish his or her right' to the exemption." *Id.* at ¶ 15, quoting *Campus Bus Serv. v. Zaino,* 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8. In *Satullo*, we stated that " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,' this court will affirm them." *Id.* at ¶ 14, quoting *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995).

**{¶ 15}** R.C. 5741.02(A)(1) establishes a use tax and authorizes an excise tax "on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." Pursuant to R.C. 5741.02(B), "[e]ach consumer, storing, using, or otherwise consuming in this state tangible personal property or realizing in this state the benefit of any service provided, shall be liable for the tax * * *."

**{¶ 16}** R.C. 5741.02(C), however, provides exceptions to the tax and states:

> The tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property or services, nor to the storage, use, or consumption or benefit in this state of tangible personal property or services purchased under the following described circumstances:
>
> * * *
>
> (4) Transient use of tangible personal property in this state by a nonresident tourist or vacationer, or a nonbusiness use within this state by a nonresident of this state, if the property so used was purchased outside this state for use outside this state and is not required to be registered or licensed under the laws of this state.

**{¶ 17}** R.C. 5741.01 does not define the term transient use. Pursuant to R.C. 1.42, this term should be read in context and construed according to common usage unless this term has acquired a technical or particular meaning. *See Cincinnati School Dist. Bd. of Edn. v. State Bd. of Edn.*, 122 Ohio St.3d 557, 2009-Ohio-3628, 913 N.E.2d 421, ¶ 15. In common usage, the term transient means "passing through or by a place with only a brief stay or sojourn," and the

term use means "the act or practice of using something." *Webster's Third New International Dictionary* 2428, 2523 (2002).

{¶ 18} In its decision, the BTA, relying on its own precedent, determined that the term transient use " 'connotes a use of a short or temporary duration' " and that a period of 60 consecutive days "would seem to be an appropriate and reasonable guideline" for determining whether an owner's use of a boat in Ohio had been transient. *Gallenstein*, 2012 WL 5465162 at *4, quoting *Steenrod v. Tracy*, BTA Nos. 1991-A-1108 and 1991-A-1109, 1993 WL 186521, *3 (May 21, 1993). The BTA further determined that the record "clearly establishes appellant resides in the state of Kentucky and therefore, is a nonresident of the state of Ohio." *Id.* The BTA also rejected the tax commissioner's contention that Gallenstein was not a tourist or vacationer in this state because of the proximity of her residence to her husband's business in Ohio, stating:

> While the proximity of appellant's residence to Ohio and the location of appellant's husband's business in Ohio may contradict a characterization of appellant as an out-of-town "tourist," we disagree with the commissioner's generalization that appellant cannot be considered a "vacationer" in Ohio; on the contrary, since it is undisputed that the boat is only being used for recreational purposes, appellant, when using the boat, can be considered a "vacationer" in any location, in any state. A person can be designated a "vacationer," regardless of the proximity of the vacation destination to one's home. Further, appellant and her husband testified that the boat had been docked in Indiana since its purchase and that they preferred to take the boat to locales other than Ohio because of the boat traffic and other environmental concerns in Ohio and, as a result, *the total number of days in Ohio*

*waters since the boat's purchase in June 2002 was less than sixty days*. \* \* \* In addition, appellant's Ohio Division of Watercraft registration application acknowledges appellant's intention to principally use the boat in Kentucky and Indiana.

(Emphasis added.) *Id.*

**{¶ 19}** Based on this reasoning, the BTA concluded that Gallenstein met the statutory requirements of the first part of R.C. 5741.02(C)(4)'s test, i.e., "[t]ransient use of tangible personal property in this state by a nonresident tourist or vacationer, or a nonbusiness use within this state by a nonresident of this state, if the property so used was purchased outside this state for use outside this state." However, the BTA determined that Gallenstein did not establish that she was not required to register her boat in Ohio. *Gallenstein* at \*4-5.

**{¶ 20}** R.C. 1547.531 sets forth the registration requirements for watercraft in Ohio. It provides:

(A)(1) Except as provided in division (A)(2) or (B) of this section, no person shall operate or give permission for the operation of any watercraft on the waters in this state unless the watercraft is registered in the name of the current owner in accordance with [R.C. 1547.54], and the registration is valid and in effect.

\* \* \*

(B) All of the following watercraft are exempt from registration:

\* \* \*

(3) Those that have been documented by the United States coast guard or its successor as temporarily transitting, whose

principal use is not on the waters in this state, and that have not been used within this state for more than sixty days.

**{¶ 21}** Registering a boat in Ohio is not the same as *being required to register* a boat in Ohio because R.C. 1547.531(B)(3) exempts from registration watercraft that have been documented by the United States Coast Guard or its successor as "temporarily transitting." Despite this exemption provision, the term "temporarily transitting" does not appear in federal regulations governing the United States Coast Guard's documentation of vessels, *see* 46 C.F.R. 67.1 et seq., and it is not referred to as an endorsement in the federal regulations, *see* 46 C.F.R. 67.17 (registry endorsement), 46 C.F.R. 67.19 (coastwise endorsement), 46 C.F.R. 67.21 (fishery endorsement), 46 C.F.R. 67.23 (recreational endorsement). When the General Assembly enacts a statute, a just and reasonable result and a result feasible of execution is intended. R.C. 1.47(C) and (D). In this case, because the term "temporarily transitting" does not appear in federal regulations governing the United States Coast Guard's documentation of vessels, the BTA unreasonably and unlawfully interpreted R.C. 1547.531(B)(3) when it stated:

> While the appellant's boat arguably meets the principal use and maximum day provisions of the statute, we find no evidence in the record that the U.S. Coast Guard has documented the boat as "temporarily transitting." * * * Accordingly, we find appellant's use of the subject boat does not qualify as an exempt use, pursuant to R.C. 5741.02(C)(4), because the boat is required to be registered, pursuant to the provisions of R.C. 1547.531.

(Footnote omitted.) *Gallenstein*, 2012 WL 5465162, *5.

**{¶ 22}** To require Gallenstein to show that her boat has been documented as temporarily transitting by the United States Coast Guard when it does not appear that the United States Coast Guard issues a temporary transitting endorsement is unreasonable because no one could qualify for this exemption. And the fact that Gallenstein arguably could have registered her boat in Kentucky or Indiana, *see* Kentucky Rev.Stat.Ann. 235.010 et seq.; Indiana Code Ann. 9-31-3-1 et seq., militates against the conclusion reached by the BTA that boat is required to be registered in Ohio pursuant to R.C. 1547.531. *Gallenstein* at *5. Despite her best efforts, Gallenstein was not able to cancel her Ohio registration as ordered by the tax department, and assessment of a use tax on that basis is also unreasonable. The fact remains that from 2002 through 2004, Gallenstein operated her boat in Ohio waters fewer than a dozen times, and her principal use was not on the waters of this state. It is unreasonable and unlawful to assess a $12,000 use tax, an $1,800 penalty, and $1,252.93 in pre-assessment interest on a Kentucky resident who purchased a boat in Indiana and who harbors it there and who chose to register that boat in Ohio to reduce the chances of police boarding it on the few occasions she operated it in Ohio waters.

### *Conclusion*

**{¶ 23}** Because the BTA acted unreasonably and unlawfully in affirming the tax commissioner's use tax, penalty, and pre-assessment interest, its decision is reversed.

Decision reversed.

PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., dissent.

FRENCH, J., dissents and would affirm the decision and analysis of the BTA.

_____

**LANZINGER, J., dissenting.**

{¶ 24} Because I believe that Gallenstein was required to register her 44-foot Sea Ray in Ohio and has not satisfied the requirements of transient use as set forth in R.C. 5741.02(C)(4), I dissent. I would hold that the BTA properly upheld the imposed use tax, and I would affirm the decision of the BTA.

{¶ 25} It is presumed that "every sale or use of tangible personal property in Ohio is * * * taxable." *Std. Oil Co. v. Peck*, 163 Ohio St. 63, 65, 125 N.E.2d 342 (1955). As a result, statutes relating to the exemption or exception from sales or use taxes are to be strictly construed, and one must affirmatively show a right to a claimed exemption or exception. *Canton Malleable Iron Co. v. Porterfield*, 30 Ohio St.2d 163, 166, 283 N.E.2d 434 (1972) (cataloguing cases); *see also Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8; *R. Wantz & Sons Constr. Co. v. Kosydar*, 38 Ohio St.2d 277, 280, 313 N.E.2d 360 (1974).

{¶ 26} I do not believe that Gallenstein has met her burden of "affirmatively proving [her] entitlement" to the transient-use exception. *Bay Mechanical & Elec. Corp. v. Testa*, 133 Ohio St.3d 423, 2012-Ohio-4312, 978 N.E.2d 882, ¶ 16. The fourth of R.C. 5741.02(C)'s nine exceptions to the use tax is at issue here. It states:

> (4) Transient use of tangible personal property in this state by a nonresident tourist or vacationer, or a nonbusiness use within this state by a nonresident of this state, if the property so used was purchased outside this state for use outside this state and is not required to be registered or licensed under the laws of this state.

{¶ 27} To be entitled to the use-tax exemption, Gallenstein was required to prove four things: First, that her use of the Sea Ray in Ohio was "transient,"

second, that she, as a user of the personal property in Ohio, was a nonresident tourist or vacationer or a nonresident who was using the property for nonbusiness purposes, third, that the Sea Ray was purchased outside Ohio for use outside Ohio, and finally, that the Sea Ray was not required to be registered or licensed under Ohio law.

{¶ 28} I agree with the BTA's determination that Gallenstein and her husband were nonresident tourists or vacationers, *Gallenstein v. Levin*, BTA No. 2008-A-1340, 2012 WL 5465162, at *4 (Oct. 23, 2012), and that they undisputedly had purchased the boat for use primarily outside Ohio, *id*. at *5. The open questions are confined to the first and fourth requirements.

*The use of the Sea Ray was not "transient"*

{¶ 29} The Revised Code does not define "transient use." But for purposes of use tax, R.C. 5741.01(C) broadly defines "use" to include "the exercise of *any* right or power incidental to ownership of the thing used." (Emphasis added.) The Gallenstein Sea Ray was registered with the Ohio Department of Natural Resources ("ODNR") from May 2003 until March 2006. The right to register a watercraft is certainly an incident of ownership, and that right was exercised by Gallenstein here in Ohio.

{¶ 30} Consistent with *Webster's Third New International Dictionary* 2428 (2002), which defines "transient" as "passing through or by a place with only a brief stay or sojourn," the BTA concluded that "transient use" " 'connotes a use of a short or temporary duration.' " *Gallenstein* at *4, quoting *Steenrod v. Tracy*, BTA Nos. 1991-A-1108 and 1991-A-1109, 1993 WL 186521, *3 (May 21, 1993). After examining statutes on watercraft registration, the BTA chose 60 days as "an appropriate and reasonable guideline" for determining whether an owner's use of a boat in Ohio is transient. *Id.* But one "use" that triggers the use tax in Ohio is a boat's registration in Ohio. When a boat is registered in Ohio, that registration is effective every single day from the date it is issued until the

date it expires. The Gallenstein watercraft was registered from May 2003 until March 2006.

{¶ 31} I would hold that no matter how often an owner actually operates a boat in Ohio, the operation cannot qualify for the transient-use exception while the boat is registered with the ODNR. In other words, the notion of "transient use" is incompatible with the holding of an active Ohio registration. Gallenstein's registration of the Sea Ray prevents her use of the boat in Ohio from being labeled as "transient," and she accordingly fails to satisfy the first requirement of the transient-user exception.

*The Sea Ray was required to be registered or licensed under Ohio law*

{¶ 32} Furthermore, even if Gallenstein's use were transient, this would satisfy only one requirement under R.C. 5741.02(C)(4). She still must show that her Sea Ray was not required to be registered—and this she did not do. The statute setting forth the registration requirements for watercraft in Ohio, R.C. 1547.531, provides:

> (A)(1) Except as provided in division (A)(2) or (B) of this section, *no person shall operate* or give permission for the operation of *any watercraft on the waters in this state unless the watercraft is registered in the name of the current owner* in accordance with [R.C. 1547.54], and the registration is valid and in effect.

(Emphasis added.) The exception mentioned in division (A)(2) is inapplicable, relating as it does to a temporary registration following the sale of a watercraft. Among the exemptions in division (B) is a provision relating to temporary use:

(3) Those that have been documented by the United States coast guard or its successor as temporarily transitting, whose principal use is not on the waters in this state, and that have not been used within this state for more than sixty days.

**{¶ 33}** The majority emphasizes that the United States Coast Guard does not issue any documentation that endorses watercraft as "temporarily transitting." And it concludes that because Gallenstein could not qualify for this exemption, she was not required to register her boat in Ohio. Nevertheless, the inability to meet the documentation portion of the exemption merely means the exemption itself does not apply. It does not invalidate R.C. 1547.531's clear requirement that no person shall operate watercraft in Ohio waters unless the watercraft has proper registration. I agree with the BTA's determination that Gallenstein failed to establish that she was not required to register her boat in Ohio. *Gallenstein*, 2012 WL 5465162, at *4-5. R.C. 1547.531 clearly requires that watercraft used in Ohio must carry valid registration. She has not satisfied the fourth requirement of the transient-user exception.

**{¶ 34}** Because Gallenstein failed to show both that her use of the Sea Ray was transient and that the Sea Ray was not required to be registered or licensed under Ohio law, she failed to show that she is entitled to the transient-use exception set forth in R.C. 5741.02(C)(4). Accordingly, I would affirm the BTA's determination that the transient-use exception does not apply in this case and that Gallenstein is subject to the use tax.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Lindhorst & Dreidame Co., L.P.A., James H. Smith III, and Bradley D. McPeek, for appellant.

Michael DeWine, Attorney General, and Melissa W. Baldwin, Barton A. Hubbard, and Julie Brigner, Assistant Attorneys General, for appellee.

_____